DES MOINES, DECEMBER TERM, A. D. 1869.

IN THE TWENTY-THIRD YEAR OF THE STATE.

PRESENT:

Hon. JOHN F. DILLON, Chief Justice.
  "   CHESTER C. COLE,
  "   GEORGE G. WRIGHT, } Judges.
  "   JOSEPH M. BECK.

HARVARD LAW SCHOOL LIBRARY

---

SWEATLAND *v.* ILL. AND MISS. TELEGRAPH COMPANY.

27 433
83 262
27 433
86 343
86 402

1. Telegraph companies: PRINTED RESTRICTIONS: STATUTE. *It seems* that it is competent for a telegraph company, notwithstanding section 1253 of the Revision, which provides that a telegraph company is liable for all mistakes in transmitting messages made by any person in its employment, as well as for all damages resulting from a failure to perform any other duty required by law, to adopt reasonable rules, conditions and regulations governing the transmission of messages, restricting its liability in cases where the message is not repeated.

Vol. XXVII. — 55

2. —— EXTENT OF LIABILITY : NEGLIGENCE. While a telegraph company may, in the absence of any statutory regulation to the contrary, restrict, by printed stipulations and conditions attached to the message, its liability in cases where the message is not repeated, it will, notwithstanding such special printed conditions, be liable for mistakes happening in consequence of its own fault, such as want of proper skill or ordinary care on the part of its operators or the use of defective instruments, but not for mistakes occasioned by uncontrollable causes, such as atmospheric electricity, provided these mistakes could not have been guarded against or prevented by the exercise of ordinary care and skill on the part of the operating agents of the company.

3. —— CANNOT EXONERATE FROM ALL LIABILITY. Telegraph companies it would seem, by general printed conditions, cannot relieve themselves from liability for the improper or negligent conduct of their servants.

4. —— These companies, like railroad companies, owe important duties to the public. They must act in good faith toward it, and cannot, by general printed conditions, demand unreasonable concessions from those proposing to send messages.

5. —— ORDINARY CARE : GROSS NEGLIGENCE : ONUS PROBANDI. While they are liable for want of ordinary care and skill as well as for gross negligence notwithstanding the condition restricting their liability in cases where the message is not repeated, the burden of proof is on the plaintiff to show this want of ordinary care or fault on the part of the company ; and where this condition as to repeating messages exists and is known to the party sending the message, or where he is bound to take notice of it, and a mistake occurs in an unrepeated message, the mere proof of such mistake, without some other evidence of carelessness or negligence on the part of the company, would not render it liable.

6. —— RULE APPLIED. It was *held* in the present case, that the plaintiff, in order to recover, must prove something more than the mistake in the message, and the damage resulting therefrom. He must show that this mistake was caused by the fault of the company, and that it might have been avoided if the company's instruments had been good ones and if its agents had possessed the requisite skill and exercised proper care and diligence in respect to the transmission and receipt of the message in question.

7. Evidence: DECLARATIONS OF AGENT : RES GESTÆ. To render the declarations of an agent admissible in evidence to bind his principal, they must have been within the scope of the agency, and made

during the continuance of it in respect to the transaction then depending. Subsequent declarations are not part of the *res gestæ* and are not admissible.

## *Appeal from Cedar District Court.*

### Wednesday, October 6.

Liability of telegraph company for mistakes in messages: statute construed: effect of conditions as to repeating messages: evidence: admissions of agents.— The plaintiff seeks in this action to recover from the defendant damages caused by a mistake in a telegraphic message. On the trial it was agreed between the parties "that, if the plaintiff is entitled to recover, the amount of his recovery should be nine hundred and fifty dollars, *and interest.*"

That there was a mistake in the message is an undisputed fact. The main question on the trial was, whether, under the circumstances and the law, the defendant was responsible for the damages which the mistake had occasioned.

The general nature of the case is set forth in the charge of the District Court to the jury, which, so far as it was excepted to and is material, is as follows:

Charles Sweatland
        *v.*                          } *Instructions.*
The Illinois & Mississippi
Telegraph Company.

Gentlemen of the Jury:—The plaintiff alleges, in substance, that, in the month of December, 1866, he was engaged in the business of buying hogs in the village of Mechanicsville, in Cedar county, Iowa, for shipment to the Chicago market, and that the commission firm of Stiles, Brewster & Co., were his agents and correspondents, whose duty it was to send plaintiff from time to time telegrams stating the price of hogs in the Chicago market. That, on the 28th day of December, 1866, the

said Stiles, Brewster & Co. wrote a message, of which the following is a copy:

"CHICAGO, *Dec.* 28*th*, 1866.

"To C. Sweatland, Mechanicsville, Iowa: Live hogs six (6), six quarter (6¼). Dressed six three-quarters (6¾) seven (7) firm.          STILES, BREWSTER & CO."

That said Stiles, Brewster & Co., as plaintiff's agents, delivered the message to defendant in Chicago, to transmit to plaintiff at Mechanicsville, aforesaid; that defendant undertook to transmit said message, and so unskillfully and neglectfully transmitted the same, and was guilty of such gross negligence in the use and employment of machinery and instruments defective and unfit for the purposes designed, in its office in Mechanicsville, of all which defects defendant had long had actual notice, that a message materially differing from said original message was delivered to plaintiff, and that the following is a copy of the message actually delivered to the plaintiff:

"*Dec.* 28*th*, 1866.

"By telegraph from Chicago.

"To C. Sweatland, Mcsville.

"Live hogs six three-quarters (6¾), seven (7) firm.

"STILES, B. & CO."

He further avers that hogs were not so high as represented by said message delivered to him, and, relying on the correctness of said message, he immediately purchased a large number of hogs, by reason of which he was damaged in the sum of $964, for which he asks judgment against the defendant.

The defendant answers in substance, that, on the 28th of December, 1866, the said Stiles, Brewster & Co. wrote in the blank portions of a printed form prepared by said defendant and furnished to its customers, and particularly to the said Stiles, Brewster & Co., which telegram, when thus filled up and signed, was and is as follows, viz.:

" CATON LINES.

" Illinois and Mississippi Telegraph Company, in connection with all other lines in the United States and Canadas.

" Terms and conditions on which messages are received by this company for transmission.

" In order to guard against and correct as much as possible some of the errors arising from atmospheric and other causes appertaining to telegraphy, every important message should be repeated by being sent back from the station at which it is to be received to the station from which it is originally sent. Half the usual price will be charged for repeating the message, and, while this company in good faith will endeavor to send messages correctly and promptly, it will not be responsible for errors or delays in the transmission or delivery, nor for non-delivery of repeated messages, beyond two hundred times the sum paid for sending the message, unless a special agreement for insurance be made in writing, and the account of risk specified in this agreement, and paid at the time of sending the message. Nor will the company be responsible for any error or delay in the transmission or delivery, or for the non-delivery of any unrepeated message, beyond the amount paid for sending the same, unless in like manner specially insured, and the amount of risk stated therein, and paid for at the time. No liability is assumed for errors in cypher, or obscure messages; nor is any liability assumed by this company for any error or neglect by any other company over whose lines this message may be sent to reach its destination, and this company is hereby made the agent of the sender of this message, to forward it over the lines extending beyond those of this company. No agent or employee is allowed to vary these terms, or make any other or verbal agreement, or any promise as to the time of performance, and no one but a superintendent

is authorized to make a special agreement for insurance. These terms apply through the whole course of this message, on all lines by which it may be transmitted.   J. D. Caton, Pres't, Ottawa, Ill.

"*Dec.* 28, 1866.

" By telegraph from Chicago.

    " To C. Sweatland, Mcville.

            " Live hogs six (6), six quarter (6¼), dressed six three quarters (6¾), seven (7) firm.

Stiles, B. & Co."

That said message was delivered to the defendant at Chicago, to be transmitted as directed in said message, but without directing the same to be repeated back or offering to pay for repeating, or promising to pay for repeating, and there was charged only the regular tariff for sending messages without repeating, and the defendant undertook to send the message, subject to the conditions above set forth.

Defendant further alleges that a message was delivered to plaintiff at Mechanicsville, but whether it was the same as that delivered to defendant at Chicago the defendant does not know, and cannot admit or deny.

The defendant further alleges that if any mistake did occur in the transmission of said message, it was not from the fault or negligence of the defendant, but was caused from the interruption to the working of said telegraph by atmospheric electricity or other unavoidable or uncontrollable cause, and without the fault of the defendant, and denies that its machinery in its office at Mechanicsville was defective, and unfit for the purposes designed.

Nor were said instruments the cause of said mistake, if one was committed.

The defendant denies having any knowledge or information sufficient to form a belief as to what the plaintiff did

Sweatland v. Illinois and Mississippi Telegraph Co.

in the way of purchasing hogs, relying on said message, or how much, if any thing, he lost thereby, and therefore denies said allegations.

1. It is claimed on the part of plaintiff that, under the laws of this State, the defendant is absolutely liable for mistakes, and that it is not competent for the defendant to limit its liability by the contract set out in the answer.

You are instructed that the conditions as to the repeating of the message are reasonable and proper, and such as the defendant had a right to make, notwithstanding the statute of this State. It was for Stiles, Brewster & Co., the agents of the plaintiff, to determine, at the time of delivering the message, whether it was of sufficient importance to the plaintiff to have it repeated.

3. If you find, from the evidence, that the contract was entered into as claimed by the defendant, it was still the duty of the defendant to employ skillful operators, and proper instruments, so that the message could be transmitted as correctly as messages are ordinarily transmitted without repeating, and if you find that the message was not transmitted correctly, not by reason of its not being repeated, but because of unskillful operators or defective or improper instruments, then the defendant is liable for whatever damages the plaintiff has shown he has incurred, by reason of the message having been improperly transmitted.

The plaintiff's agents when they took upon themselves the risk of sending the message, without repeating, had a right to expect that the defendant would not employ unskillful operators or defective instruments in transmitting the message.

4. On the other hand, if you find, from the evidence, that the failure to deliver the message, as it was handed to the defendant at Chicago, was not by reason of unskillful operators, or defective instruments, or from any fault

of the defendant, but that the mistake occurred by reason of the interruption of the working of the telegraph, by atmospheric electricity or other unavoidable or uncontrollable causes, then the defendant is not liable, and you should so find.

10. It is insisted by the plaintiff that the instrument at Mechanicsville was defective, and to that defect the mistake is attributable. The defendant was bound to keep good instruments, that is, such as would work correctly, as such instruments usually do that perform well. They were not required to keep any particular make or kind, or to have all the latest improvements, unless such improvements are necessary to the correct transmission of messages.

11. On this question, as to the negligence, much has been said about the burden of proof. If you believe from the evidence that mistakes are liable to occur, without fault, when messages are not repeated, and that plaintiff's agents did not require it to be repeated, there is no presumption of negligence in the defendant, and the burden is on the plaintiff to show that the mistake occurred by reason of a defective instrument. It is difficult to correctly explain what is meant by the burden of proof. It is sometimes called a preponderance of evidence, and by a preponderance of evidence is meant a greater weight of testimony.

12. On this question of negligence and the use of imperfect or defective instruments, the rule is that the defendant is held to use such skill as is ordinarily employed in transacting business of that character by prudent men for themselves, and the instruments must be such as men, ordinarily skillful as operators, would use in transmitting messages of their own, and if the mistake occurred by reason of the want of such skill or such instruments, the defendant is liable, and you should so find.

13. It is conceded that if plaintiff is entitled to recover at all, the damage he sustained was $950, and if you find for the plaintiff, you will add to that amount interest, at the rate of six per cent per annum, from the time said loss occurred to the present time."

JAS. H. ROTHROCK,

*Judge.*"

The plaintiff proved the delivery, at Chicago, by his agents, of the message to the defendant for transmission ; that it was delivered to him at Mechanicsville with the words omitted as alleged ; that he acted on the faith of the message as received, and bought a large quantity of hogs, and was damaged in consequence. The plaintiff adduced evidence to show that the relay magnet in the office of the company at Mechanicsville, on which the message was received, was defective, and that it was in consequence of such defect that the mistake occurred. The witness produced by the plaintiff to show this defect was Mr. Short, the company's operator, by whom the message was received. He testified, in chief, that the instrument was imperfect ; that the platinum was so short in the set screw that it sometimes allowed the brass to come in contact with the armature, thereby making an imperfect connection, and that, by reason of such imperfect connection, the mistake was (in his judgment) made.

On cross-examination, however, he stated that when the current is disturbed by atmospheric electricity, it produces the same "*spluttering*" effect as imperfect connections, and that it is as likely that the mistake was produced in consequence of atmospheric electricity as a defect in the instrument.

The defendant denied that the instrument was defective, and on this point produced the testimony of Mr. Stevens, the predecessor and successor of Mr. Short, as

operator at Mechanicsville, and who stated his judgment to be that the instrument was a good one — as good as nine out of ten of the average ; that he never knew it to make any mistake before or since the mistake in question.

Mr. Short, in his testimony, also stated that, prior to the mistake in the plaintiff's message, he had notified Bliss, the superintendent of the defendant, that the instrument was not in proper working order, and desired a new one.

Bliss, the superintendent, gives it as his opinion that the instrument was a good one, and in good condition ; that it was a better and safer instrument, in the hands of country operators, than a more sensitive instrument; denies that the platinum being short could produce the effects stated by Mr. Short, and states that the mistake must have been caused by atmospheric electricity, giving his reasons therefor. Both he and Stevens state that interruptions from atmospheric electricity are frequent, and that it will produce what is called the *spluttering* effect on the relay.

The superintendent denies any recollection of Short applying for a new instrument.

The evidence is quite voluminous, and the above is only an outline of the more material portions of it.

One of the questions made by the appellant relates to the decision of the District Court, allowing the plaintiff to testify to certain declarations which Short, the receiving operator, made to him at a period subsequent to the delivery of the erroneous message. On this point, the bill of exceptions shows the following facts : After the plaintiff had introduced the testimony of Mr. Short, showing the mistake in the message as delivered, and also the statements of this witness as to the condition of the instrument and cause of the mistake, the substance of which is stated above, in further support of his action the plaintiff was himself, under the statute, " introduced as a witness in his own behalf, for the purpose of giving

in evidence a conversation which he had with Mr. Short (whose deposition had just been read), from one to three days after the despatch had been received, and in relation to the mistake therein, and the cause of such mistake. The defendant objected; the court overruled the objection, and the defendant excepted. And the said Sweatland was allowed to testify as follows:

"After I had received the dispatch and bought hogs, and had found out the mistake, I went to the operator, Mr. Short, told him there was a mistake in the dispatch, and asked him how it happened? He said probably it was made there. I told him I could not afford to lose so much, and that I would sue the company. He (Short) said, "If you sue, off comes my head." He then telegraphed to Clinton for the message as it had been received at that office, and afterward told me that the Clinton office [intermediate Chicago and Mechanicsville] sent him the message correctly as it was sent from Chicago. He then told me that after he commenced receiving the message the instrument commenced "spluttering." He said the instrument did not work right; he believed that was the cause of the mistake. He said he had written to the company two or three times about it, but they paid no attention to it. This conversation was on Saturday or Monday after the receipt of the message. The message was received on Tuesday night, Dec. 28th." To all of which testimony the defendant objected, which objection was overruled, and the defendant excepted.

The jury found for the plaintiff.

The defendant moved for a new trial, because the verdict was contrary to law and evidence; because the court erred in giving to the jury the instructions numbered 3, 4, 10 and 12, and in admitting in evidence the aforementioned declarations of Short, made to the plaintiff after the delivery of the message.

The motion was overruled and the defendant excepted. Judgment passed upon the verdict, and the defendant appeals.

The errors assigned are the same matters set down in the motion for a new trial.

The other necessary facts are noticed in the opinion of the Court.

*J. D. Caton, Wolf & Landt* for the appellant.

I. The testimony of the plaintiff to the declarations of Short should not have been admitted on the trial as evidence,—

1. Because they were not the best evidence.

2. They were not a part of the *res gestæ*.

3. They were made under improper influences. Hawk P. C. Ch. 46; 1 Greenlf. § 113; Story Eq. § 135.

II. The plaintiff entered into a contract with the defendant that the company should not be responsible for any loss accruing from any mistake in transmission. This was a legal contract, and binding on the parties, and released all damages. 7 Eng. L. and Eq. 395; 11 id. 506; 25 id. 396; *Leeson* v. *Holt*, 1 Stark. 186; *Hinton* v. *Dibbon*, 1 Q. B. 646.

III. At most, under this contract, the defendant could only be held responsible for gross neglect, while some of these instructions hold the defendant responsible for ordinary negligence, and others for slight negligence. 45 Barb. 274; *McAndrew* v. *Elect. Tel. Co.*, 84 Eng. C. L. 3; *Wann* v. *West. U. T. Co.*, 37 Mo. 472; Story on Bailments, § 549; *Camp* v. *N. U. Tel. Co.*, 1 Met. (Ky.) 164; Jones on Bailments, 8; *Ellis* v. *Am. Tel. Co.*, 13 Allen, 266.

IV. The court should have granted a new trial, for the reason assigned in the motion in the court below. *Scott* v. *Blum*, 2 Gilm. 595; *Gordon* v. *Crook*, 11 Ill. 142:

*Schwab* v. *Gingerick*, 13 Ill. 697; 1 Barn. and Pul. 339;
2 T. R. 4; 8 Wend. 672; 5 John. 38; 3 id. 532.

*Cook & Drury* for the appellee.
(Brief not found on the reporter's file.)

DILLON, Ch. J. — Properly to examine and consider
the important, and, in this State, undecided questions aris-
ing on the record, this cause was held over from the
last term. We are now prepared to decide it.

The original message left with the defendant for trans-
mission was this:

1. TELEGRAPH        "Live hogs, six (6), six quarter (6¼). Dressed,
COMPANIES:
printed restric-  six three-quarters (6¾), seven (7) firm."
tions: statute.       As delivered to the plaintiff it read:

"Live hogs six three-quarters, seven (7) firm." From
the middle of the message was omitted the words:

"Six (6), six quarter (6¼), dressed."

The effect of the omitted words was that the price of
dressed hogs was stated to be the price of live hogs. That
the mistake occurred is not controverted. That the
plaintiff acted upon the message as delivered, purchased
hogs upon the basis of value therein stated, and was dam-
aged in consequence to the extent of $950, are undisputed
facts.

The general question in the case on the merits is,
whether the defendant is liable for this mistake and the
damages which it occasioned to the plaintiff?

The solution of the question involves the consideration
of several others, which we proceed to notice in proper
order.

The plaintiff, in the first place, maintains that the
defendant is liable for this mistake by the express pro-
visions of the statute. (Rev. § 1353.)

The section is this:

" The proprietor of a telegraph *is liable for all mistakes* in transmitting messages made by any person in his employment, as well as for all damages resulting from a failure to perform any other duties required by law."

To this portion the defendant answers, that the statute applies only when the parties have made no special contract; that the legislature did not intend to prohibit parties to enter into such reasonable stipulations as they might deem proper respecting the transmission of messages; that in this instance the parties, viz., the company on the one side and the plaintiff, through his agents, on the other, did regulate their respective rights by the conditions and terms printed at the head of the message; and it is to these conditions and terms, so far as they apply, and not the general declaration of the statute, that resort must be had to determine the measure of the defendant's liability.

To this the plaintiff rejoins, that the statute is founded on public policy and is declarative of it; that it authorizes no regulations or contracts restricting the liability it imposes; and it is argued that since it is shown that, by repeating messages, mistakes may be avoided, it becomes under the statute the *duty of the company itself to repeat the message*, a duty which it cannot, by regulations, shift on to the public.

On this point the court below held with the defendant, as will be seen by reference to the instruction numbered one, copied in the statement of the case. If there was any error in this it is one of which the defendant cannot complain. Our inclinations, however, are that the point was rightly ruled below, but since the exigencies of the present appeal do not require any positive determination of it, we pass it, with the statement that we will concede, for the purposes of this case, that the statute does not make the defendant liable at all events, and that it is

competent for the company, notwithstanding the statute, to enter into stipulations, or to adopt *reasonable* rules, conditions and regulations governing the transmission of messages; and it will also be conceded that the regulation respecting the repetition of messages (the only one involved in this case), is reasonable, and binding upon the parties. It is the more proper to pass the point without any decisive ruling, because it has occurred to us, though counsel, we believe, did not allude to the circumstance, that since the message was delivered to the defendant in *another State*, it might be debatable whether our statute had any application to the case, even though the mistake may have happened in that part of the defendant's line which is situate in this State.

Respecting the right to limit liability by stipulation, or printed conditions, see, generally, *Wann v. Telegraph Company*, 37 Mo. 472, 1866 (similar statute to Iowa); *Camp v. Telegraph Company*, 1 Met. (Ky.) 164, 1858 (right affirmed without aid of statute); *Ellis v. Telegraph Company*, 13 Allen (Mass.), 226, 1866 ; *MacAndrew v. Telegraph Company*, 17 C. B. 3, 1855 ; *Telegraph Company v. Carew*, 15 Mich. 525, 1867; S. C., 7 Am. Law Reg. (N. S.) 18; *Birney v. Telegraph Company*, 18 Md. 341, 1862; *Breese v. Telegraph Company*, 45 Barb. 274, 1866 ; and see cases collected, 2 Am. Law Rev. 615–632; and by Prof. Dwight, 4 Am. Law Reg. (N. S.) 192–199.

Having assumed the validity of the printed conditions so far as respects the repetition of messages, and that the message in question was sent subject thereto, the inquiry next arises, What is the meaning and effect thereof, so far as they relate to the facts of the present cause?

2. EXTENT OF LIABILITY: negligence.

As to the cause of the mistake, the parties differed. One of the positions assumed by the plaintiff, if not the

main one, was that the mistake was caused by a defective instrument in the office of the company at the place at which the message was received. He offered evidence tending to establish his theory. This theory was denied by the defendant, and it offered evidence tending to show that the mistake could not have been occasioned by the alleged defect in the instrument, but must have been occasioned by uncontrollable atmospheric causes.

The third and fourth instructions of the court (see *statement*) relate to these two conflicting theories.

In the third instruction the court directed the jury that, although the contract was made as claimed by the company, yet " it was still the duty of the defendant to employ skillful operators and proper instruments, * * and if the message was not transmitted correctly, not by reason of its not being repeated, but because of unskillful operators or defective or imperfect instruments, the defendant is liable."

The fourth instruction lays down the converse proposition, and says to the jury that if the mistake was caused " by the interruption of the working of the telegraph by atmospheric electricity, or other unavoidable or uncontrollable cause, then the defendant is not liable."

The tenth instruction requires that the company, notwithstanding the special conditions, shall keep good instruments. The eleventh instruction substantially tells the jury that it is incumbent on the plaintiff to show that the mistake happened by reason of a defective instrument. The twelfth instruction lays down the law to be that, if the mistake happened in consequence of the want of ordinary skill in the operators, or in consequence of the use of imperfect or defective instruments, the defendant would be liable. And from the special terms and conditions at the head of the printed message the defendant could not well complain of this statement of the law. On general prin-

ciples, it would be bound to employ skillful operators, to exercise due care, and to use good instruments. And on general principles if it omitted this duty, and damage ensued to a party in consequence of such omission, he would have his action therefor.

We do not understand the learned counsel for the company to insist that the general principles of law stated in the instructions of the court would not be correct if it were not for the printed conditions under which the message was sent, and which, it is insisted, modify the common-law liability of the company.

It is claimed that these conditions govern the rights and measure the liabilities of the parties, and that their effect is to exonerate " the company from any loss which may arise from mistakes in messages, whether arising from unavoidable causes, *or the improper or negligent conduct of its servants.*" It is insisted by the distinguished counsel for the appellant that such conditions are reasonable, because " the element used is subtle, intangible, fitful, capable of only partial control by man, and always liable to great interferences from causes entirely beyond human control. Atmospheric electricity is only one of the many difficulties with which the telegrapher has to contend. At first the mode of dealing with these difficulties was not understood, nor is it yet matured, although men of talent, of scientific attainments, and of the closest observation, have devoted many years to the subject. Enough, however, has been learned to demonstrate absolutely the impossibility of avoiding mistakes, except by repeating messages. * * Contracts such as the present are reasonable, and such as the company had a perfect right to make. Still, we are liable for gross negligence, notwithstanding the stipulation would exempt us. This is the hardest rule that has ever been held against a telegraph company." And he objects

to the third instruction, "because it holds the company liable for ordinary negligence instead of gross negligence;" and to the fourth instruction, because it is contended that its effect is, that if the mistake was not produced by unavoidable causes the company is liable.

The substance of the court's instructions, taken together, is, that the company, notwithstanding the special printed conditions, is responsible for mistakes happening in consequence of its own fault — such as want of proper skill, or ordinary care on the part of its operators, or the use of defective instruments — but is not, under those conditions, responsible for mistakes occasioned by uncontrollable causes, such as atmospheric electricity, provided these mistakes could not have been ascertained and guarded against, or prevented by the exercise of ordinary care and skill on the part of the operating agents of the company.

Thus viewing the instructions of the court, they state the law correctly, at least not unfavorably to the defendant.    The considerations mentioned by the appellant's counsel are quite sufficient to justify a court (in the absence of a statute otherwise settling the liability of the company) in holding reasonable the condition as to repeating messages, and exempting it from liability for mistakes in unrepeated messages, occasioned by unavoidable or uncontrollable causes, provided proper instruments have been used and proper care and skill exercised by the company's employees to avoid or prevent the mistake.

But the arguments suggested furnish no reason why a
3.—— cannot ex- company should be allowed to make general
onerate from all
liability.        printed conditions which should have  the
effect to relieve it from liability for "the improper or negligent conduct of its servants." Telegraph companies, like railroad companies, owe important duties to the public.  Generally, there are no competing lines, and

if so, the business is necessarily in the hands of a few. These companies must act in good faith toward the public, and cannot, by general conditions, demand unreasonable concessions from those proposing to send messages.

It is not necessary to discuss what might be lawfully done by a special contract.

But I deny that companies can adopt general printed rules, exacting, as a condition of sending messages, that the sender shall exonerate or release the company from damages caused by defective instruments, or by the want of proper skill in the operators, or by their failure to use due care.

The court has carefully examined the printed conditions underneath which the message in question was written, and its opinion is, that none of these conditions should be construed as undertaking to exempt the company from liability caused by its own fault. These conditions, fairly viewed, pre-suppose or assume that the company will discharge its reasonable, common-law duties, by using good instruments and by employing skillful agents, who shall, in the performance of their duties, exercise due and proper care.

The statements in these "conditions" as to atmospheric causes, and the promise "in good faith to endeavor to send messages correctly and promptly," shows that the purpose obviously is to guard against liability for mistakes arising from atmospheric or other like causes, not to provide for exemption from liability for mistakes caused by its own *avoidable* faults.

If any sinister or unfair purpose, such as exoneration from liability for its own want of due care, was intended, such purpose — conceding its lawfulness — should be unmistakably expressed, and will not be held by the court to lurk in any general language

Nor can we assent to the proposition maintained by the appellant's counsel, that under such conditions "the company is held for *gross negligence* only, this being the hardest rule that has ever been held against a telegraph company."

*5. —— ordinary care: gross negligence: onus probandi.*

We have examined all the leading cases known to have been decided, with respect to this subject, and have not found one holding (when this was the exact point in judgment) that the ordinary printed conditions as to repeating messages have the effect to release the company from mistakes caused by its own want of ordinary care.

There is a *dictum* in *McAndrew's Case*—the first case which arose (17 Com. B. 3, 1835), to the effect that by regulations the companies may protect themselves from liability for mistakes in unrepeated messages, except those caused by their gross negligence, and this expression has been incautiously copied and used *arguendo* by other courts, as for instance in *Wann* v. *Tel. Co.*, 37 Mo. 472.

Without adverting to the difference between the English and American rule as to the right of a carrier to limit his liability and the mode of doing this when it is allowed, it is sufficient to repeat that it never has been held that a telegraph company may, by general printed conditions, stipulate for exemption from all liability except for gross negligence.

In view of the importance of the principles involved and the consideration that the law as to the rights and responsibilities of telegraph companies is, in a large measure, yet to be settled, I may be justified in departing from my usual course and review briefly some of the cases bearing upon the question respecting the effect of the condition as to repeating the messages upon the liability of the company.

In *Ellis* v. *Tel. Co.* (13 Allen [Mass.] 226, 1866), the mistake in the dispatch consisted in making it read $175

instead of $125. The company had established the usual condition as to repeating and insuring messages. In the statement of the case occurs the important fact: " There was *no evidence of carelessness* or negligence, except the error in the sum, which was made by some agent of the company in transmission." The Supreme Court, in an opinion prepared by the able and distinguished Chief Justice BIGELOW, held the stipulation as to repeating messages to be reasonable, and that, so far as reasonable, it would limit the liability of the company. It also held that the plaintiff was not entitled to recover without further proof of carelessness than that there was an error in the message as delivered. After critically examining the case, I am of opinion that it is only *authority* for these two points. The reversal of the judgment below in that case must be supported on the ground that, under the circumstances, the plaintiff ought to show carelessness on the part of the company or its agents, and that, as the message was not repeated, this could not be inferred (as the court below had instructed) from the mere fact that a mistake in the sum had been made. If this be the true view of that case, as it undoubtedly is, it commands cordial assent.

It is said by Chief Justice BIGELOW, near the end of the opinion, that " of·course the defendants would be liable for any *negligence* causing damage, which would not have been prevented by a compliance with these rules," viz.: those relating to the repetition of messages. If it is meant to be asserted, as might be implied, that a company can, as respects unrepeated messages, make conditions exempting themselves from all liability for negligence causing damage, this is a proposition from which, in this breadth, I must withhold my concurrence. *Wann* v. *Tel. Co.* (37 Mo. 472, 1866), is very much like Ellis' Case, just mentioned.

The plaintiff ordered, by telegraph, salt from New York, by " *sail.*" As the dispatch was delivered it read ship

by "*rail.*" This was done, and damage caused, and suit brought. The plaintiff did not repeat. The company had the ordinary condition as to repeating dispatches. It appeared that "*the only evidence to sustain the charge of carelessness was the mistake in the message.*" On this state of facts the company was held not liable. The case cannot, I think, be fairly said to *decide* that the effect of not repeating is to exempt the company from liability for want of *ordinary* care, since there was no evidence of the want of such care on its part. The judgment below in this case was, in my opinion, properly reversed, but the reversal should be placed on the ground that the plaintiff offered no evidence to prove neglect (except the error in the message), and the instructions of the court below held the company (under the regulations as 'to repeating) to too strict a measure of liability.

In *Camp* v. *Tel. Co.* (1 Met. [Ky.] 164, 1858), a message containing an offer for the purchase of whisky was delivered, reading 16 cents per gallon instead of 15 cents. Usual condition as to repeating.

The plaintiff *neither averred* or *proved negligence* on the part of the company, or want of proper skill in its agents, but based his action wholly upon the notion that the company was by law bound to transmit the message correctly. It was held, and most properly, that the condition as to repeating was reasonable, and that the company was not liable.

The court say: "The plaintiff must, therefore, be regarded as having sent the message at his own risk, inasmuch as he failed to have it repeated, and consequently the company [under the case made] is not liable for the mistake."

This is right; but the case does not hold that such a condition can exempt a company from the duty of exercising proper care to secure correct transmission even

though the message be not repeated. Of the same general character is *Bresse* v. *Tel. Co.*, 45 Barb. 274, 1866. The mistake ($7,000 instead of $700) was caused " by some error of some of the defendant's operators, *the precise cause of which is unknown*," and it was held that the condition as to repeating was a defense. But the case does not decide that such condition will exempt the company and its agents from the exercise of proper care to secure a correct transmission.

In accordance with these views is the opinion of a distinguished jurist. Speaking of *Mc Andrew's Case*, Judge Redfield (2 Railway, 3d ed., p. 244, pl. 12) says : " In the case last cited a *quere* is made how far the company, in such case (exempting itself from liability unless message is repeated), will be liable for gross negligence. We think there ought to be no doubt as to the responsibility of the company in such cases *for even ordinary neglect.* And the whole extent to which such a condition should be held to qualify the responsibility of the company is, that it will not be held absolutely responsible as insurers of the accuracy of transmitting unless repeated and paid for as such." And he repeats the same view in his more recent work on carriers, just published. (Redf. on Carr. §§ 552, 557, 561.)

In the *Tel. Co.* v. *Carew (supra)*, Judge CHRISTIANCY, *arguendo*, says, " But doubtless the use of good apparatus and instruments would be required, and reasonable skill and a high, perhaps the very highest, degree of care and diligence in their operation."

These authorities above cited fairly warrant the proposition that where the condition as to repeating exists and is known to the party, or where he is bound to take notice of it, and a mistake occurs in an unrepeated message, the mere proof of such mistake, without some other evidence

of carelessness or negligence on the part of the company, will not make it liable.

To apply that principle to this case : The plaintiff, to recover, must prove something more than the mistake and the damage.   He must show that this mistake was caused by the fault of the defendant, and that it might have been avoided if the defendant's instruments had been good ones, and if the defendant's agents had possessed the requisite skill and exercised the proper care and diligence in respect to the transmission and receipt of the message in question.

As the judgment must be reversed and a new trial ordered, for the error of the court in the admission of evidence, we have decided those questions of law which would necessarily arise on the re-trial.

Appellant's counsel contend, that the verdict is against the evidence.

Upon this point we do not deem it necessary or expedient to express any opinion.   The evidence on the next trial may not be the same.

If the plaintiff can establish, that the instrument was not a reasonably efficient one, or not in good repair and condition, and that by reason thereof the mistake was caused, he will thereby make out a cause of action, notwithstanding the printed conditions at the head of the message.

So if the Clinton operator at the intermediate station, or Mr. Short, the operator at the terminal station, did not, under the circumstances, considering the weather, the character of the message, the nature of the interruption and the like, use that degree of skill, care and diligence which was reasonably required, and in consequence the mistake happened, when, by the exercise of such skill, care and diligence, the mistake in question would have been avoided, the company is liable.

But if the error is not shown to be attributable to the fault of the company, the plaintiff must fail. And, if the jury believe, from the whole evidence, that the mistake was occasioned by atmospheric causes, which a reasonable degree of care and skill could not guard against and prevent, it is their duty to find for the defendant.

One other point ought, perhaps in this connection, to be referred to, and the law in relation thereto stated, since it may again arise.

We do not understand the pleadings to limit the plaintiff to proving the apparatus to be defective in order to make out his case, but he alleges generally the negligence of the defendant in the transmission of the message.

The defendant has contended in this court that the mistake in the message arose in this way :

While the message was being received by Mr. Short, the receiving operator at the place of destination, atmospheric electricity affected the line west of the sending operator. This happened when the receiving operator, Mr. Short, was at the first word " six." The machine then *spluttered.* The sending operator was ignorant of this, and continued sending the message until he had passed the last " six." Meanwhile the receiving operator gets his instrument into " adjustment," that is, he regulates the tension of the rubber springs so as to adapt the machine to the strength of the current, and he then says to the sending operator to repeat from the word " six," that is, from the last word which was received plainly. The receiving operator meant the first six, the sending operator supposed he meant the last six, for he had continued to send the message in ignorance of the faulty working of the line beyond him. The sending operator repeated from the last " six," and from that only, in consequence of which all the message between the two words " six " was omitted.

If these were the facts, is the defendant liable? The general principles governing this inquiry have been before stated. If the operating agents of the company used, under the circumstances, reasonable and proper care to guard against the mistake, then there is no liability, for there would be no negligence, and if no negligence the company is protected by the printed condition as to repeating the message.

On the other hand, if the operating agents of the company did not use ordinary, usual and reasonable care in transmitting the message, and if the want of care (and not atmospheric causes, or the infirmities of telegraphing) caused the mistake, the company is liable. But the plaintiff not having repeated the message, it is incumbent on him to satisfy the jury that the mistake was caused by the defendant's negligence, and would not have occurred had the defendant's agents used proper care in the transmission and receipt of this particular message.

As appears in the statement of the case, the court, against the defendant's objections, admitted the plaintiff to give in evidence certain admissions of Short, the operator, made at a period distinctly subsequent to the delivery of the message. The rule of law respecting the admissibility of the declarations and admissions of agents to bind their principals is well settled.

7. — evidence, declaration of agent: res gestæ.

To be binding the declaration must be within the scope of the agency, and constitute part of the *res gestæ*. The statement of the law on this point by Mr. Greenleaf (1 Ev. § 113), is very happily expressed. "The admission or declaration of the agent binds the principal only when it is made during the continuance of the agency, in regard to a transaction then depending, *et dum fervet opus*," etc. And the law, as thus laid down, has been before recognized in this court. *Farner* v. *Turner*,

1 Iowa, 53; *Wiggins* v. *Leonard* 9 id. 194, which, in principle, applies to this case. And see also Story on Agencies, §§ 134, 137, and cases cited.

The law is well illustrated by two recent cases in Massachusetts. In the one, an action by a passenger against a railroad company for the loss of his trunk, the admission of the conductor, baggage master or station master, as to the manner of the loss, made the next morning, in answer to inquiries for the trunk, are competent against the company, it being part of the duties of such agents to deliver the baggage of passengers, and to account for the same, if missing, and inquiry is made within a reasonable time. *Morse* v. *R. R. Co.*, 6 Gray, 450.

But, in an action against a railroad company for damages by a collision through the alleged negligence of the engineer, his statements as to the accident, made a few days afterward, were held not competent against the company. *Robinson* v. *The R. R. Co.*, 7 Gray, 92.

The message, in the case at bar, had been delivered from one to three days before the alleged declarations were made by the agent, which were, in part at least, narrative of a past occurrence, and no part of the *res gestæ* — no part of a depending transaction, and it falls within the class illustrated by the case last cited, and not by the one first cited from Gray's reports?

In the opinion of the court it is very doubtful whether any portion of the declarations or admissions of Mr. Short was competent. But certain it is that his statements that he " believed the instrument was the cause of the mistake; that he had written to the company two or three times about it, and that they paid no attention to it," are clearly incompetent and admissible on no conceivable principle.

We have looked at the case to see whether, conceding the incompetency of this portion of the evidence, we

could fairly say that it did not prejudice the defendant. But when it is remembered that one of the principal points of contest before the jury related to the question of fact whether or not the instrument was defective, that to this question both parties directed a large portion of the evidence, and that this subject occupies a considerable part of the charge of the court, the materiality of the admissions of Short, erroneously allowed to go to the jury, is too manifest to admit of dispute. Under these circumstances this court cannot affirm that it reasonably appears that the evidence did not unjustly prejudice the cause of the defendant.

And for this reason the judgment of the District Court must be reversed. The question made by the defendant as to non-liability for interest on the damages is settled against it by the stipulation on file, which fixes the amount of the recovery, if there is a liability, and provides that the sum named shall be with interest.

Reversed.