## Case No. 4,004.

### DORGAN v. TELEGRAPH CO.

[1 Am. Law T. Rep. (N. S.) 406.]

Circuit Court, S. D. Alabama. April Term, 1874.

TELEGRAPH COMPANIES — DELAY IN TRANSMISSION AND DELIVERY — UNINSURED MESSAGES — MEASURE OF DAMAGES — CONTRACT EXEMPTIONS.

[1. When a telegraph company receives a message for transmission, the fair inference is that the sender resorts to the telegraph because he cannot, or does not, choose to wait for the mail, and the company agrees, by implication, that his message shall be carefully transmitted, and delivered without unnecessary delay.]

[2. The fact that a message left at a telegraph office in New York at 5:20 p. m. was not delivered at Mobile until 10:30 a. m. on the next day is prima facie evidence of negligence, it appearing that under ordinary circumstances the message could be transmitted from one telegraph office to the other in about four minutes.]

[3. A person using the telegraph, unless he insures his message, takes the risk of delay and failure to deliver, arising from accidents and obstructions to which telegraph lines are liable.]

[4. Telegraph companies are bound to deliver messages impartially, in good faith, and in the order in which they are received.]

[5. The company is only liable for damages which were within the reasonable contemplation of the parties at the time of making the contract for transmission; and hence if the company's agent was informed that the message was important, and the message itself indicated that it was a business communication, and that delay would result in serious damage, the company is liable for any loss resulting from negligent delay: but if the agent was only informed that the message was important, with a request for early transmission, but the dispatch did not in any way indicate that damage would be suffered by delay, then the liability is limited to nominal damages merely.]

[6. A contract exempting a telegraph company from liability for damages resulting from delay, unless the message was ordered repeated, is void, for it is against public policy to allow the company to exempt itself from liability for the results of its own negligence.]

[Cited in Primrose v. W. U. Tel. Co., 154 U. S. 7, 14 Sup. Ct. 1104.]

Harry T. Toulmin and D. P. Bestor, for plaintiff.

Thomas H. Herndon and John Little Smith, contra.

WOODS, Circuit Judge (charging jury). The following facts are not controverted: At about eleven o'clock a. m. of the 30th of January, 1872, the plaintiff sent from Mobile, Alabama, over the lines of the Western Union Telegraph Company to New York City, the following cipher dispatch: "To J. S. Abbott & Co., New York: Sell Samuel basis silver full style and staple fob dog demon. Reply to-day; have refusal." Which, when translated, reads as follows: "Sell 500 bales, basis middling, full style and staple, free on board at 21⅝ cents, at ½ penny freight. Reply to-day; have refusal." This dispatch was transmitted to New York and there delivered without unreasonable delay to J. S. Abbott & Co. On the same day, some time between twenty and forty minutes after five o'clock p. m., New York time, J. S. Abbott & Co. delivered to the receiving clerk at the main office of defendant, in New York, to be transmitted over the lines of defendant to the plaintiff in Mobile, the following cipher dispatch, the same being in response to the dispatch sent by the plaintiff to J. S. Abbott & Co:—"Sold Samuel, basis silver, fob dog demon, prompt shipment, draw with documents. Edward Dobell. Insure. Telegraph drafts." The meaning of this dispatch was not communicated to the defendant or its agents, but the clerk who received it was told it was important, and requested to forward it immediately. A majority of persons who send messages by telegraph say to the receiving clerk that their messages are important and request that they be sent at once. This dispatch translated would read: "Sold 500 bales, basis middling, free on board at 21⅝ cents, freight ½ penny; prompt shipment. Draw with documents on Edward Dobell. Insure against fire. Telegraph drafts." The dispatch was received in Mobile at ten o'clock p. m. of January 30, but was not delivered to the plaintiff in Mobile until half past ten o'clock a. m. of the next day. The time required to transmit a message of ordinary length from New York to Mobile, when the lines are in good order and there is no other message having precedence, is about four minutes. On January 31st the plaintiff bought five hundred bales of cotton in Mobile to fill the contract of sale referred to in the dispatch to him, at the price of fifty-four thousand one hundred and ninety-nine dollars and twenty-eight cents, and the same cotton could have been

purchased in Mobile on January 30th for eight hundred and ninety-nine dollars, and forty-three cents less than that sum. New York time is fifty-five minutes faster than Mobile time, so that when it is five o'clock p. m. in Mobile it lacks but five minutes of six p. m. in New York. J. S. Abbott & Co., to whom the plaintiff's message was addressed and who sent the reply, were the agents of the plaintiff in New York, and the plaintiff paid for both dispatches. He paid for the dispatch from J. S. Abbott & Co., three dollars and sixty-nine cents, which was the usual day rate for unrepeated and uninsured messages. The message sent by J. S. Abbott & Co. was written upon the blanks furnished by the defendant for day messages, and upon which it required day messages to be written. The business office of plaintiff in Mobile is but one or two blocks from the office of defendant, and his residence about a mile or a mile and a half. It is the custom of the defendant at half-past nine o'clock p. m. to dismiss its messenger boys for the day, and at ten o'clock p. m. to close its office. The plaintiff before January 30th, 1872, had done much business with the defendant's office in Mobile. The plaintiff alleges that the delay in not delivering the dispatch sent by J. S. Abbott & Co. to him until January 31st was the result of the carelessness and negligence of the defendant and its agents, and that he suffered damage to an amount equal to the difference in the value of five hundred bales of cotton in Mobile on the 30th and of the same quantity of cotton in Mobile on the 31st of January. To the declaration of the plaintiff setting up this claim, the defendant pleads a general denial of the case stated by the plaintiff, with leave to introduce evidence in proof of any matter that might be specially pleaded.

The defense as really made amounts to this:—(1) That generally the averments of the declaration are not true. (2) That there was no negligence or carelessness on the part of the defendant in transmitting or delivering the message. (3) That if the plaintiff suffered damage from the neglect of defendant, he contributed to the damage by his own neglect and carelessness. (4) That if the plaintiff suffered any damage by the delay in the transmission and delivery of the dispatch, it was a damage not within the reasonable contemplation of the parties when the contract for sending the message was made between them. (5) That the printed blanks, upon which the defendant required messages to be written, contained a clause exempting the defendant from liability from all except nominal damages for delay in the delivery of unrepeated messages, and that in any event the plaintiff can only recover nominal damages.

Your first duty, under the pleadings in this case, will be to inquire whether the plaintiff has made out his case by proof, substantially as he has stated in his declaration. So far as this part of the case is concerned, the only point in dispute between the parties is as to the question of negligence. Prompt and speedy communication between different localities is one of the most urgent wants of the present age. To meet this demand telegraph companies are chartered, and they engage to subserve the public interests by transmitting intelligence promptly and speedily. Their engagement is to receive and to transmit by telegraph and to deliver, without unnecessary delay, the message according to the directions. Persons whose messages do not require the most rapid transmission and speedy delivery, take the cheaper and slower method of communication afforded by the mails. When a telegraph company therefore receives a message for transmission, the fair inference is that the sender resorts to the telegraph because he cannot or does not choose to wait for the mail, and the telegraph company agrees by implication that his message shall be carefully transmitted by telegraph and delivered without unnecessary delay. 2 Redf. R. R. 287–304; Law of Telegraphs, §§ 146, 187, 188, 352; Allen, Tel. Cas. 71, 114, 284, 335, 563, 570; Sweatland v. Telegraph Co., 27 Iowa, 433. You will therefore inquire whether there was negligence on the part of the defendant in either transmitting or delivering the message in question. It is admitted that the message was left at the office in New York, for transmission to Mobile, at about twenty minutes after five p. m., and that it was not delivered until half past ten the next morning; and that under ordinary circumstances it would require only about four minutes to transmit the message from the office of the defendant in New York to its office in Mobile; and that plaintiff paid day rates and not night rates for the message. These facts being conceded, I instruct you as a matter of law, that a prima facie case of negligence is made out against the defendant. Moore v. Westervelt, 1 Bosw. 357; Allen, Tel. Cas. 284, 345, 570; Law of Telegraphs, § 370; Shear. & R. Neg. 610.

The admitted facts having established the negligence of the defendant, the burden of proof is put upon defendant to rebut the prima facie case thus made. For although the facts unexplained show negligence, the defendant may, by evidence, so excuse and explain its conduct as to make it perfectly clear that there was, in fact, no negligence whatever. This the defendant has undertaken to do. It claims to have shown that the message was not promptly transmitted on account of obstructions beyond its control, and which are peculiarly incident to the transmission of intelligence by telegraph. The rule of law governing this branch of the case may be thus stated: Those who use the telegraph as a means of communication, unless they insure the delivery of their messages, take the risk of delay and failure of their messages to reach their destination

arising from the accidents and obstructions to which telegraphic lines are liable.

Apply this rule of law to the facts in this case. Has the defendant satisfied you by the evidence that the reason why the message of plaintiff did not reach Mobile until ten o'clock p. m. was owing, not to the negligence or carelessness of any of the defendant's agents, but to obstructions in the line which the defendant could not foresee or prevent? If you so find, then the defendant has succeeded in disproving the charge of negligence so far as the delay in the transmission of the message to Mobile is concerned. It is the duty of a telegraph company to transmit messages impartially, in good faith, and in the order in which they are received. Crouch v. Railroad Co., 14 C. B. 255; Johnson v. Railroad Co., 4 Exch. 367; Wibert v. Railroad Co., 12 N. Y. 245. If the defendant has satisfied you that its adherence to this rule contributed to the delay in the transmission of the plaintiff's message, and that such adherence, combined with obstructions in the working of the line, caused the delay in the transmission until ten o'clock p. m., then the prima facie case of negligence, so far as concerns the transmission of the dispatch, is overcome, and you should find that the defendant was not in fault in failing to transmit the message at an earlier hour. Under these instructions you will determine whether the defendant was guilty of negligence in not transmitting the dispatch to its destination before ten o'clock p. m. If you shall be of opinion that the telegraph company was not in fault, but used due diligence to transmit the message, and was prevented from so doing as claimed, you will then proceed to inquire whether the defendant has shown that there was no negligence in the delivery of the message after its arrival in Mobile. Was the defendant bound to deliver the message after ten o'clock at night? If the message showed upon its face that its delivery that night was a matter of importance to the plaintiff, and that a failure to deliver immediately would involve him in loss, and it appeared that the message was a day message and had been delayed, then it is for you to say whether due diligence did not require of defendant to deliver the message at once, or at least make an effort in good faith to do so. If, on the other hand, the message did not on its face indicate the importance of immediate delivery; if the plaintiff had left no notice at the office of defendant that he expected an important message, and had not requested its immediate delivery, and the message actually arrived after the messenger boys had been dismissed for the night, and after the hour for closing the telegraph office had passed, and after the plaintiff had closed its own office and gone to his residence, a mile, or a mile and a half from the telegraph office,—if you find these facts, then you will consider and determine whether due diligence required under these circumstances the delivery of the message on the night of the 30th of January. If you find that it was not reasonable, under the circumstances, that the defendant should be required to deliver the message on the night of its reception, you will be justified in the conclusion that the defendant was not guilty of negligence in not delivering the message on the night of the 30th; and you should then inquire whether there was negligence in not delivering the message at an earlier hour than half past ten o'clock a. m. of the next day.

Ought the defendant to have delivered the message at an earlier hour on the 31st? Before passing upon this question there is another raised by the evidence that you should decide upon. The defendant claims to have introduced proof sufficient to show that the message was taken to the office of defendant between eight and nine o'clock a. m., and was not delivered because there was no one there to receive it. Whether this is the fact, or whether the message was taken to the office of plaintiff for the first time at half-past ten o'clock a. m., you will decide whether there was, under all the circumstances, negligence in the delivery of the dispatch on the morning of the 31st. If under these instructions applied to the facts you shall be of opinion the defendant has rebutted the prima facie case of negligence made by the plaintiff, and has explained satisfactorily the delay in the transmission and delivery of the message, then that is the end of the case, and it will be your duty to return a verdict for the defendant. If, on the other hand, you should be of opinion that the defendant has been guilty of negligence in the premises, you will then proceed to consider other matters of defence. One of them is that if the plaintiff suffered any damage he contributed to bring it about by his own carelessness and neglect. The rule of law upon this branch of the defence has been thus stated: One who is injured by the mere negligence of another cannot recover any compensation for his injuries if he, by his own ordinary negligence, contributed to produce the injury of which he complains. See Shear. & R. Neg. § 25, and cases there cited. I give you this as the law upon the point in question. The defendant insists that the plaintiff, by sending a message of inquiry to New York might have avoided the loss of which he complains, and that, had he acted as a prudent man, he would have done so. That being in negotiation for the sale, both in New York and Liverpool, of the same five hundred bales of cotton, which he alleges he had on hand on the 30th inst., having made an offer to sell in New York, he should not have sold in Liverpool without ascertaining definitely whether his New York offer had been accepted. Now, this is a point upon which you must judge. What were the dictates of ordinary prudence and care? If a prudent and careful man would have telegraphed to New York before closing the sale in Liverpool,

and by failing to take this precaution the plaintiff has contributed to his own damage, and if by the use of this means he might have. and should have, avoided the injury, he cannot recover. His own negligence is a complete bar to his recovery. As men of experience in business affairs, you must determine whether in this respect the plaintiff was in fault. If upon this issue you find for the defendant, that. also, will put an end to the case, and it will be your duty to return a verdict for the defendant. If you shall be of opinion that the defendant was guilty of neglect. whereby the plaintiff suffered damages, and that the plaintiff did not contribute to his own damage by his own neglect and could not have avoided the damage by the exercise of ordinary prudence and skill, then it will be your duty to return a verdict for the plaintiff for some amount. Ordinarily. this amount would be the difference between the value of five hundred bales of cotton in Mobile on the 30th of January, 1872, and of the same quantity of cotton in the same place on the next day. This difference is shown to be $899.43. But what that amount should be in this case will depend upon some considerations which I am about to submit to you.

The damage sustained by the defendant must have been within the reasonable contemplation of the parties at the time the contract for the transmission of the message was made. If the plaintiff, through his agent in New York at the time he left the message for transmission, informed the defendant's agent that the message was important. and the dispatch itself indicated that it was a business message, and that serious damage might accrue to the plaintiff if it was not promptly transmitted, it became the duty of defendant to use diligence to put it upon its transit, and it would become liable for the damage which might be the result of negligent delay in sending the message. But if the plaintiff's agent simply said it was an important message and requested its early transmission, but the dispatch itself was so worded that it did not in any way indicate that the plaintiff might suffer damage by its delay, then the plaintiff would only be liable for nominal damages. If the negligence should be found in the delivery of the dispatch. after it had reached its destination, you should not give any weight in estimating the damages to what was said by the plaintiff's agent at the other end of the line about the importance of the dispatch. The question is, was the agent of the company here in Mobile, under the circumstances, and looking to the words of the dispatch, put upon notice that a failure to deliver it promptly would entail a serious damage upon the plaintiff? If he was, that is sufficient to sustain the plaintiff's claim to recover all the damage that he has sustained. If he was not, if it only appeared to the agent in Mobile to be a dispatch announcing a sale in New York of

five hundred bales of cotton in response to an offer by the plaintiff to sell that amount made at a certain hour in the day by message from Mobile. and gives information about the details of the sale, and if it contained no reasonable notice that damage might accrue from delay in its delivery, then the damage for the delay would be nominal only.

Another matter should be borne in mind in estimating the damages, namely, that you are only to allow such damages as were caused by the negligence of the defendant. Was there any negligence of defendant on the 30th of January? If there was, would the plaintiff have been able to avoid the injury he claims to have suffered, even had the defendant been prompt in transmitting and delivering the message? In other words, could the plaintiff, after the time when he claims the message should have reached him on the 30th, have purchased five hundred bales of cotton for any less amount than he was compelled to pay the next day? If he could not, his damage is not the result of the neglect of defendant, and he cannot recover: But suppose you should find there was no neglect on the 30th, but there was neglect on the 31st of January. You will then inquire whether if the defendant had delivered the message on the 31st, at the time demanded by its duty. the plaintiff could have avoided loss. Suppose you should conclude that the message should have been delivered at seven o'clock or eight o'clock or nine o'clock a. m., of the 31st; could the plaintiff have purchased five hundred bales of cotton cheaper at these hours than at half past ten, when the message was in fact delivered? If he has not satisfied you that he could, then he can only recover nominal damages.

There is but one point more that I deem it necessary to notice. The blanks upon which the defendant requires all messages for transmission to be written contain, under the words "All messages taken by this company subject to the following terms." this stipulation. "To guard against mistakes, the sender of a message should order it repeated. that is, telegraphed back to the originating office. For repeating, one half the regular rate is charged in addition; and it is agreed between the sender of the following message and this company that the company shall not be liable for mistakes or delays in the transmission or delivery of any unrepeated message beyond the amount received for sending the same." It is claimed by defendant that this stipulation was brought home to the notice of plaintiff; that his assent may be therefore presumed, and that it is binding. and limits the recovery in this case to the amount paid for sending the message. Under the instructions I am about to give you, it will be unnecessary for you to consider whether this notice was assented to by the plaintiff or not. I instruct that so much of this alleged contract as pro-

vides that the company shall be liable for delays in the delivery, or for the non-delivery, of an unrepeated message only to the amount paid for sending the same, is not binding; the company had no right to exact it; that it is against public policy, and absolutely void. The telegraph company is engaged in a quasi public employment. A large portion of the business of the civilized world is carried on by means of the facilities for intercourse which it affords. Incalculable sums depend upon the alacrity, care, and good faith which it brings to the discharge of its duties. The whole business of the commercial world is to a degree dependent upon it. The public has the right to exact at least ordinary diligence. A common carrier is not allowed to protect himself by contract from liability for the results of his own negligence. New York Cent. R. Co. v. Lockwood, 17 Wall. [84 U. S.] 357. There seems to be no good reason why the same rule should not be applied to a telegraph company. Shear. & R. Neg. § 565; True v. Telegraph Co., 60 Me. 9, Allen, Tel. Cas. 530; W. U. Tel. Co. v. Graham, 1 Colo. 182; Candee v. Telegraph Co., 34 Wis. 471. I therefore instruct you that you should not allow this alleged contract for immunity for all except nominal damages for negligence to have any effect upon your verdict.

The jury returned a verdict for defendant.