## FARNER v. TURNER.

In an action of replevin for a buggy, claimed to be exempt from execution on a judgment against a firm of which plaintiff was a partner, on the ground that the same was individual property, and that plaintiff was a practicing physician, and the same was necessary for his use in his profession, in order to maintain himself and family, the plaintiff, for the purpose of proving that the buggy was his private property, and not that of the firm of which he was a member, could not offer in evidence the book of the original entries of the firm, and show by an entry therein, that the note which was given in payment for the buggy, was charged to the private account of the plaintiff about the time mentioned by the person by whom the buggy was sold.

The testimony offered was not a part of the *res gestœ*, and as between the parties to this suit, amounted to no more than hearsay evidence.

To constitute declarations and entries by clerks and third persons, part of the *res gestœ* of the transaction, they must be made at the time the act is done, which they are supposed to characterize, and be well calculated to unfold the nature and quality of the facts which they were intended to explain, and so to harmonize with them, as obviously to constitute one transaction.

If at the time of the seizure by the officer, the buggy was the vehicle by the use of which the plaintiff, as a physician, habitually earned his living, it was exempt from seizure on attachment, or execution, irrespective of the time when, or the motive with which, he might procure it.

### *Appeal from the Lee District Court.*

THIS was an action of replevin brought by the plaintiff to recover a certain two-horse buggy from the defendant, who, as sheriff of Lee county, had taken possession of the same, by virtue of an execution in favor of the Queen City Varnish Company, on a judgment against the firm of W. H. Farner & Co., of which the plaintiff had been a member. The plaintiff claimed the buggy as his private property, and exempt from execution, as well on account of its being individual property, as that he was a practicing physician, and was in the habit of using it, and the same was necessary for his use, in his profession, in order to maintain himself and family. The bill of exceptions shows the following facts: On the trial, the plaintiff proved by competent witnesses, that Taunton, of the firm of Farner & Co., was residing in St. Louis, Missouri, and that W. H. Farner, the other partner, and plaintiff in the cause, was sick at Fort Des. Moines. He then proved by Mr. Turner, of the firm of Edwards & Turner, attorneys at law, that a certain account book then in court (the day book), was the book of original entries of W. H. Farner & Co., and placed in his possession by said Farner & Co., as their attorneys, and as the assignee of said company, before the attachment in the case of the Varnish Company was levied on the buggy in controversy. He further proved, by one Coats, that said witness made the buggy, and sold and delivered it to said plaintiff, who was then of the firm of Farner & Co., between the first and

twelfth of November, 1853.   The plaintiff then offered the books of original entries of Farner & Co. in evidence, to prove by an entry in said book in the handwriting of Taunton, that the note which was given in payment for the buggy, was charged to the private account of the plaintiff, of the date mentioned by said Coats when he sold the buggy, for the purpose of showing that the buggy was the private property of plaintiff, and not the property of Farner & Co., to which evidence the defendant objected, which objection was sustained by the court, and the evidence excluded.   The plaintiff then produced a witness, a practicing physician of Keokuk, by whom he proved that shortly before the buggy was attached, the firm of Farner & Co. was dissolved; that the plaintiff had advertised in the newspaper in the city of Keokuk, that he had again commenced the practice of medicine, Farner being a regular physician by profession; that plaintiff, at the time the buggy was attached, was hold· ing himself out in the community as a practicing physician, and known as such, and seeking employment in his profession for a livelihood; that it was necessary and usual for a physician, practicing medicine in Keokuk and the surrounding country, to have a buggy to use in his profession; that witness had not seen Farner use the buggy in his profession —did not know that he had patients—and that he had just commenced practicing.   In the course of the trial, the plain· tiff asked the court to give the jury the following instructions:

"First. That if they find from the evidence in this case, that the buggy attached was the private property of William H. Farner; and they further find, that at the time it was attached, said Farner was a practicing physician, or acting as such, and that it was necessary for a practicing physician to have a buggy, to enable him to practice in his said profession [to gain] a living, that such buggy was exempt from attachment.

" Second. It is not necessary to constitute a practicing physician, that he should actually be treating cases; but if he is a physician in fact, and seeking to practice his profes·

sion, and holding himself out, and generally known as such in community, such facts are sufficient to constitute one a practicing physician, so as to enable him to hold a buggy exempt from attachment, provided the jury are satisfied from the evidence, that he owned the buggy with an intention so to use it, and earn a living as a physician.

"Third. If the jury believe from the evidence, that the buggy now in controversy, was the private property of W. H. Farner, and that at the time it was attached, said Farner was holding himself out, and known in community, as a physician, seeking to make a living in that capacity, and that it is usual and necessary for a physician to have a buggy in the practice of his profession, then said buggy is exempt from execution."

The court refused to give the first and second instructions as asked, but modified the *first*, by striking out the words "to gain," immediately following the word "profession," and inserting the words "*the use of which he habitually earned;*" and modified the *second*, by inserting at the end of said instruction, the words, "*provided the jury are satisfied from the evidence, that he procured the buggy with an intention so to use it, and earn a living as a physician.*" The third instruction was refused. To all these rulings and decisions, the plaintiff excepted. The jury returned a verdict for the defendant, and judgment was rendered thereon. The plaintiff appeals, and in this court assigns as error, the following:

1. The refusal of the court below to admit in evidence the book of original entries of W. H. Farner & Co.

2. The refusal to give the first and second instructions asked for by plaintiff, and the modification of the same.

3. The refusal to give the third instruction asked for by the plaintiff.

*Thomas W. Claggett*, for the appellant.

The substantial issue before the jury was, whether the buggy in controversy was the private property of the plaintiff, or the property of W. H. Farner & Co., and as such, liable to seizure on execution. The entry in the books of

original entries of W. H. Farner & Co., was competent evidence to go to the jury under the issue. The books were not offered in evidence under the provisions of the Code, for the purposes therein contemplated. The court, by modifying the first and second instructions asked for by plaintiff, virtually deprived him of the benefits of the execution law. The instructions as modified, assumed that it was incumbent on plaintiff to prove that he purchased the buggy after he had commenced the practice of his profession, and for that especial purpose. Such is not the intention and design of the law. It was the duty of the court to so explain the language of the law, as to show the jury what was really required for the plaintiff to prove, to entitle him to its benefits. Under such instructions, the jury could not find for the plaintiff, without disregarding the instructions, although they might find every other fact required by the Code, to entitle him to the benefits of its provisions. It is the province of the court to give all legal instructions asked, that have a bearing on the issues to be tried; and no matter how remote the effect may be on the question, it is error to refuse the instruction.

*Samuel F. Miller*, for the appellee.

1. Greenleaf devotes a large share of his work on Evidence, to the subject of the admission of entries in books of account in evidence, and he arranges these entries under three heads: 1. Entries of *third* persons, made in the course of their regular employment or professional business, and constituting part of the *res gestœ*. 2. Entries of deceased persons; and 3. Entries made against the interest of the party making them. The entry of Taunton, sought to be proven by the book, was not an entry against his interest, but in his favor. As to the fact of the note being considered by the partners, as transferred to Farner, and the buggy also, Taunton was a competent witness. The admission of such entries as come under the third head above cited, depends upon two conditions, the first of which is, that the entry must have been made at or about the time of the transaction re-

corded. Some other proof is required, that it *was* made at the time of the transaction, than the mere date affixed to the entry. If the entry proved it, there would be no need for making this a preliminary condition of its admission. Our Code, in relation to the introduction of a party's own books, contains a similar provision, and a just extension of the rule to the entries of third persons in their books, would seem to be required by the policy of our law. There was no evidence to show in what part of the book this entry was made, nor that it might not have been made for the occasion, after the buggy was attached. How easy for Taunton to make the entry, dating it with a false date, for the purposes of this trial. Hence the necessity for extraneous proof, that the entry was made at or near the time of the occurrence to which it relates. Taunton was living, and competent to testify at the time of the trial. Greenleaf says in reference to the party making the entry, if he is living, and competent to testify, it is deemed necessary to produce him, and cites as authority for this, 8 Wheat. 326; 15 Mass. 380; 6 Conn. 162; 16 Serg. & Rawle, 89; 2 Hill, 537. But as this book was the book of original entries of one of the parties, it cannot come under the head of entries by third persons. It must be governed by the rules laid down in the Code in reference to the introduction of the party's own books, and inasmuch as it does not come within these rules, the evidence was properly excluded from the jury.

2. As to the instructions given and refused. There was no evidence that the plaintiff was a practicing physician. On the contrary, the only witness introduced expressly states he never knew of his actually doing any practice. There was no evidence that he habitually earned his living by the use of the buggy. It seems to have been the intention of the legislature, not only to require, in order to have the vehicle exempt, that the party should earn his living by its use, but in order to show that no occasional use, even towards earning a living, would justify the exemption, it was required that the use should be *habitual.* As the testimony offered on this point, did not authorize any instructions on that subject

favorable to the plaintiff, he was not injured by the modifi-cation of the instructions which he asked.

ISBELL, J.—The terms attachment and execution, ap-pear to be used by the plaintiff in his pleadings and bill of exceptions, indiscriminately; and we infer that, probably, there was an attachment originally levied on the property, to which the execution, under which the sheriff justifies, suc-ceeded.

The first question that presents itself for our consideration, is, did the court act within the limits of a sound discretion, in refusing to allow the entry in the book of W. H. Farner & Co., to be read to the jury?

It is not claimed, that the requisite proof was adduced to bring this entry within any of the provisions of the Code, so as to entitle it to admission. Nor is it claimed that this entry, as an entry, comes within any of the exceptions to the gen-eral rule, that hearsay evidence is not admissible. But ap-pellant insists, that this entry should have been allowed to go to the jury as *original evidence*—as being part of the *res gestœ*. That Taunton made a particular entry in his books, or the book of the firm; or that Taunton *said* the particular words so entered; as between the parties to this suit, rests on the same principle for admission. That this species of evidence should be admitted with caution, none will deny. It is part of the *res gestœ*, and should be admitted, or it is hearsay evidence, and should be excluded. If the latter, then, "that this species of testimony supposes some better testimony which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness— its incompetency to satisfy the mind of the existence of the fact—and the frauds which might be practiced under its cover— combine to support the rule that hearsay evidence is totally inadmissible." Per C. J. Marshall, in *Mima Queen and child* v. *Hepburn*, 7 Cranch, 290, reviewed and affirmed in *Negro John Davis* v. *Wood*, 1 Wheaton, 6, 8, which are leading cases in America, on this subject. But that there is a nu-merous class of cases in which declarations and entries, by

clerks and third persons, which form the *connection* of such declarations and entries, *with the principal fact to be ascertained ;* or, in other words, which from the fact of their being parts of the *res gestæ*, are not within the above rule, and are admissible, not as exceptions to it, but on account of that connection, is equally well established.

Before attempting to lay down any rule which should govern in the admission or rejection of such evidence, or attempting to trace the connection between the entry offered in this case, and the principal fact to be ascertained, it may not be amiss to premise, that with regard to the admission or rejection of evidence on this ground, a judge who tries a cause, is invested with a sound discretion (1 Greenleaf's Ev. 20, § 108), which, if not clearly transcended, appellate courts will be slow in interfering with, and attempting to regulate by nice rules. The infinitude of shades of connection between declarations offered to be proved, and the principal fact, precludes the possibility of any exact general rule for the admission or rejection of testimony on this ground ; and were appellate courts to attempt to deal too nicely with the exercise of such discretion, it would but manifest the difference in the constitution of mind, of those constituting the inferior and superior tribunals, and leave it in the power of an artful attorney, to shroud the determination of any cause in absolute uncertainty. But, although an exact general rule may not be had for the admission of testimony on this ground, we are not hence to infer, that the discretion of the court here given, is an arbitrary discretion, totally unregulated by known rules of law ; but only, that there is inherent in the versatile nature of this particular character of testimony, an impossibility of establishing for its admission any rule of exact practical application in all cases ; and, therefore, much must be left to the discretion of the judge, notwithstanding the established rules on this subject.

Among the many rules attempted to be established, for the admission of testimony on this particular ground, perhaps there is none that has been more generally adopted, by the courts of this country, and cited more approvingly

by text writers, than that by Hosmer, J. C., in *Enos* v. *Tuttle*, 3 Conn. 250, who says: "To be part of the *res gestæ*, the declarations must be made at the time of the act done, which they are supposed to characterize, and well calculated to unfold the nature and quality of the facts which they were intended to explain, and so to harmonize with them, as obviously to constitute one transaction." In speaking of entries admissible on this ground, says Greanleaf (1 Ev. § 120), "here the value of the entry, as evidence, lies in this, that it was *contemporaneous with the principal fact done*, forming a link in the chain of events, and being *part of the res gestæ*. It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily, indeed, but ordinarily and naturally, to the principal thing. It is on this ground that this latter class of entries are admitted." Again, in § 108, he says: "The principal points of attention are, whether the circumstances and declarations offered in proof, were contemporaneous with the main fact under consideration, and whether they were so connected with it, as to illustrate its character."

Adopting the principle inculcated in the above rules, let us turn to the case at bar. Here, the fact intended to be explained, involved the question: in what character did the plaintiff own the buggy? he, at the time of purchasing it, having been known and dealing in a double character, to wit: his individual character, and that of partner in the firm of W. H. Farner & Co. That he owned it in his individual right, would be sufficiently shown, *prima facie*, by showing that payment was made in plaintiff's individual, and not partnership property. And, again, that it was his individual property that was given in payment for it, would also be, *prima facie*, circumstantially shown, by showing that at the time he acquired this property, he acquired it as such individual property. If this property so given in exchange, had before been the property of the firm of which plaintiff was a member, and he had acquired it of the firm, "ordinarily and naturally," not indeed, necessarily, it would be charged to his private account, in the book of the firm.

Hence, we conclude, that this entry, if admissible on other grounds, was "well calculated to unfold the nature" of Farner's title to the buggy, and illustrate its character. But what act done, is this entry supposed, originally and primarily, to *characterize?* And with which should it be *contemporaneous?* Not the acquisition of the buggy, as the exceptions seem to assure, or the payment for the buggy; but, primarily and clearly, the act of acquiring the property by Farner from the firm, which was given in exchange for it. These several acts might, indeed, all have been simultaneous. And with regard to the purchase of, and payment for the buggy, where the record is silent as to either, we might be justified in assuming that they were so; but we know of no rule that would justify the assumption that the means of paying for it, were acquired at the time of purchase. But supposing these acts were simultaneous, or that they were separate in point of time, is there anything in the bill of exceptions, which shows that the *entry was made contemporaneously with them or either of them?* We think not. True, it appears that the book was placed in the hands of Turner before the attachment was levied, and this might have been immediately after the sale of the buggy to Farner; and Taunton might not have had access to the book to make an entry in it, after it passed into the hands of Turner; but neither of these facts appears from the record. We are left entirely in the dark, as to when the attachment was levied, and so far as the record shows, this entry might, or might not, have been in the books at that time. Again; it appears that Coats sold and delivered the buggy to Farner, some time between the first and twelfth of November, 1853, and that plaintiff offered the book to prove that the buggy was his private property, by an entry in it, in the handwriting of Taunton, in which the note that was given in payment for the buggy, is charged to the private account of said Farner, *of the date mentioned by said Coats, when he sold said buggy.* It is apparent here, that Coats fixed no definite time within a period of twelve days, at which he sold the buggy, and that the only evidence that the entry was made at any time within

Farner v. Turner.

this indefinite period, is the testimony of the entry itself by its *date*, which probably was some time within those twelve days. But to allow *the entry itself, to prove the time it was made*, to make it evidence as part of the *res gestæ*, would be to sanction all the evils attendant on the general admission of hearsay testimony above enumerated. Without some other proof, it would have been improper for the court to conclude, that this entry was made contemporaneous with either of those acts. We are, therefore; of the opinion that the court properly refused to allow the entry to be read to the jury, and, *a fortiori*, acted within the scope of its sound discretion.

With regard to the modification of the first instruction, we conclude, that the insertion of the words " the use of which he habitually earned," did not render it less in conformity with the provision of the Code, and that in this, there is no good ground for error.

In the modification of the second instruction by the court, there is error. By a fair and natural construction, the proviso appended to this instruction, taken in connection with the instruction as originally written and given to the jury, assumes that, in order to entitle the plaintiff to the benefit of the exemption law, so far as it related to the buggy, it must have been procured by him with the intention on his part, at the *time of procuring* it, to use it as a physician, &c. If, at the time of the seizure, the buggy was the vehicle by the use of which the plaintiff, as a physician, habitually earned his living, it was exempt from seizure, irrespective of the time when, or the motive with which, the plaintiff might have procured it. This instruction, as given, we think, might naturally have misled the jury to conclude that if, at the time Coats sold the buggy to plaintiff, he did not obtain it for the purpose, and with the intention of using it as a physician, it was not exempt from seizure.

We think that all that was asked for, in the third instruction, was substantially given in the first.

Inasmuch as the court erred in so modifying the second instruction that it may fairly be presumed to have misled

the jury, to appellant's prejudice, the judgment will be reversed, and cause remanded for further proceedings.

Judgment reversed.