THE STATE OF KANSAS V. ALEXANDER MONTGOMERY.

1. INFORMATION; *Verification by County Attorney.* The verification of an information by a prosecuting attorney upon information and belief, is sufficient.

2. ERROR; *When it will be cured.* Where a party obtains from the court the specific order for which he applies, he has, ordinarily, no cause for complaint, even though the court formally overrules his application, and then upon its own motion directs the order to be made.

3. COURTS; *Adjournments.* The district court can adjourn the term in one county to a day subsequent to that fixed by law for the commencement of the regular term in another county of the same district.

4. EVIDENCE; *Hearsay; Res Gestæ.* Declarations to be admissible as part of the *res gestæ* must be cotemporaneous with some principal fact which they serve to qualify or explain.

*Error from Douglas District Court.*

DEFENDANT was charged by information with the crime of grand larceny. There had been a preliminary examination, and the information was verified by the county attorney "upon information and belief." The case was tried at the February Term, 1871. The defendant filed an affidavit that the regular district judge was a material witness for him, and thereupon moved for the election of a *pro tem.* judge, which motion was overruled. Afterward, and before the trial commenced, the district judge declined to sit, and directed the election of a *pro tem.* judge, and D. T. M. was chosen such judge, and presided during the trial. The alleged larceny was committed in July, 1870, and the property stolen was a bag or sack containing gold coin, and a package containing national bank bills. When taken they were in the possession of the U. S. Express Co., and were in the immediate custody of John Mack, messenger of the company. Mack died before the trial. The State was permitted to prove certain declarations made by him on the evening of the same day and a few hours after the larceny. The trial was concluded March 8th, 1871, the jury returning a verdict of guilty. A bill of exceptions was presented by

defendant on the 9th of March, but not then settled or signed. Court adjourned until the 10th of April, and afterward the exceptions were signed by the judge *pro tem.*, and duly filed of record. The prosecuting attorney objected to the settling and signing the exceptions, alleging that by the adjournment of the court the power over the case was lost. The defendant was sentenced to a term of imprisonment, and he now appeals to this court, and brings the record here for review.

*Thacher & Banks*, for appellant:

1. The court erred in overruling defendant's motion to quash the information. The statute required the information to be verified by the prosecuting attorney, complainant, or some other person. A verification is an attesting to the truth thereof by some person cognizant of the facts. It is giving testimony of facts by which a party is put upon trial. The information takes the place of an indictment at common law. The affidavit of the prosecuting attorney, is "that he is informed and believes." By whom was he so informed? Can it be that people are to be caught up and held in confinement upon such loose allegations? It would not be sufficient for a magistrate to hold to bail upon. It is no *proof* of any kind or nature, and as a sequence, it is no verification. Had a grand jury found a bill on such testimony, it would have been the duty of the court to have quashed it or set it aside. 4 Denio, 133.

2. The court refused the motion of the defendant for a judge *pro tem.* Afterwards, the judge of his own motion, and without assigning any statutory reason therefor, ordered the election of such judge, before whom the trial was had. Was such a court, so held, a legal court? and are not all the proceedings thereunder held *coram non judice?* If so, there was no necessity of an exception, and the judgment appearing upon the record should be reversed. The prisoner stands on all his rights, and waives nothing which is irregular. 1 Scam., 476.

3. It was error to allow the question to be asked of the witness Horton "to state to the jury what John Mack then said

in relation to the loss of the packages, and where the same were lost," and to permit the witness to testify to Mack's declarations alleging the loss of the packages, when and where he had lost them, etc., which was all the direct testimony in the case showing the loss of the packages.

The defendant insists that this testimony is incompetent, because it is hearsay. Mack is shown to be the company's custodian of the property. In order to prove a larceny, it is necessary to prove non-consent.

Declarations can only be received in evidence when they are one of four cases: 1st, When the fact whether the declaration was made, and not its truth or falsity, is the point in question; 2d, expressions of pain, etc., when the existence of pain and suffering is the subject of inquiry; 3d, in cases of pedigree; 4th, when they are part of the *res gestæ.* 1 Greenl. Ev., § 123.

In order to form part of the *res gestæ* declarations must be concomitant with the act, and necessary to make clear what would otherwise be obscure. 1 Greenl. Ev., §§ 108, 110; 4 Gray, 584.

When the declaration has its force and effect as an abstract statement, depending for its effect on the credit of the person making it, it is hearsay and not admissible. 9 Cush., 32; 24 Pick., 254; 26 Iowa, 279; 48 Ill., 475; 7 Johns., 95.

The State cannot prove Mack's integrity by his declarations that he was honest. And it makes no difference that Mack is deceased, for the declarations of a deceased person are evidence of only such facts as may be proven by hearsay: 45 N. H., 349. If Mack's unsworn declarations were not competent, his being deceased does not make them so. 40 N. H., 47; 23 Ark., 131; 8 Gray, 45; 63 Penn. St., 38.

There is nowhere any pretense of making a person's declarations evidence to exonerate himself. They are admitted only when they are against the interest of the party making them. Mack was responsible for the safety of the packages. His declarations were made not against his interest, but in excuse for his laches. They were made to exonerate himself from liability or suspicion. They come within no recognized rule

of legitimate proof, and it was error to receive them. 32 Md., 280; 17 N. Y., 131.

4. The adjournment of the court was regular, from time to time. The court may hold adjourned terms: Gen. Stat., p. 308, § 10. ᴵ The court had a right to adjourn for such convenient times as the dispatch of business required. 20 Ill., 107; 17 Ind., 568; 10 B. Mon., 37; 6 Ohio St., 12. And with respect to an intervening term of the court in another county in the same district, see 4 Ohio St., 569; 15 Iowa, 244; 1 Wis., 258.

The defendant made and duly presented his bill of exceptions. It was correct, because it is so certified. The court held it, as it is claimed, until it is invalid, and for this laches of an officer it is now sought to deprive the party of its benefit. If the bill of exceptions is thus lost to the defendant, it is error, and for that reason the judgment should be reversed.

*A. L. Williams*, Attorney-General, for The State:

1. The verification of the information is sufficient. *Washburn v. The People*, 10 Mich., 372.

2. The action of the judge complained of in the second point is somewhat peculiar, but, as he granted the very thing the defendant asked, there is nothing for him to complain of.

3. The declarations of Mack, made soon after the alleged larceny, were part of the *res gestæ*, and, as such, admissible. 1 Wharton's Crim. Law, §§ 662 to 667; 1 Greenl. Ev., §§ 108, 110, and notes; 12 Wheaton, 460; 2 N. & M., 271; 9 N. H., 40, 271; 11 Iowa, 350.

The opinion of the court was delivered by

BREWER, J.: Appellant was convicted of the crime of grand larceny and sentenced to confinement and hard labor for two years in the state penitentiary. Of this judgment he now complains, and alleges several errors. First, that the information upon which he was tried was not properly verified. It was verified by the prosecuting attorney, upon information and belief. We think that was sufficient. The law contemplates

a verification by the prosecuting attorney as an official act. A party accused has a right to a preliminary examination, and a finding of probable cause before he can be placed upon his final trial. At such examination he can be heard by his counsel and witnesses. It is made the duty of the prosecuting attorney by § 68 of the code of criminal procedure to inquire into all cases of preliminary examinations which have resulted adversely to the accused. If in his judgment no information ought to be filed, he is required to prepare and file a statement in writing of his reasons therefor, which being approved by the court terminates the prosecution. No verification is required to this statement. Yet it is as potential in favor of the defendant, as the information is against him. Again, in extreme cases the judge may require the prosecuting attorney to file an information against a supposed criminal, and compel compliance by attachment, fine and imprisonment. (Code of Crim. Procedure, § 71, Gen. Stat., p. 832.) Surely the law does not contemplate the absurdity of requiring an officer to swear positively to the existence of facts of which he has no personal knowledge, and punishing by fine and imprisonment a failure to comply with this requirement. It would be more consonant with the spirit of the criminal law to punish the officer for taking such an oath, than for refusing to take it. The rule may be different where a private individual verifies the information, for with him it is voluntary and not an official act. However, it will be time enough to consider that question when it is properly before us. This whole method of prosecuting by information was in use in Michigan some years before it was adopted here, and this identical question was passed upon by the supreme court of that state. We cannot do better than quote the forcible language of Judge Christiancy, of that court, as reported in *Washburn v. The People*, 10 Mich., 385: "Why mention the prosecuting attorney at all, if the facts are to be sworn to on personal knowledge? He is no more likely to have personal knowledge of such facts than any other person, though he is from his official duties more likely to be informed of the nature

*(margin note: 1. Information; verification by county attorney.)*

of the evidence. The statute seems to contemplate the verification by a single person only, and makes no provision for compelling the attendance of witnesses for such purpose, or for requiring them to testify. The object of this verification is not, as in the 'examinations' alluded to, to satisfy the court that the defendant is guilty. It is not for the purpose of evidence which is to be weighed and passed upon, but only, as we think to secure good faith in the institution of the proceedings, and to guard against groundless and vindictive prosecutions; and this object is fully met by the previous examination and a verification upon belief."

II. When the case was called for trial defendant filed an affidavit that he desired to call the presiding judge as a witness in his behalf, and moved the court to order the election of a judge *pro tem.* This motion the record shows was overruled, but thereupon the presiding judge declined to sit in the case, and directed the election of a judge *pro tem.*, which was accordingly had, and the trial proceeded with under the direction of the *pro tem.* judge thus elected. As the defendant obtained that which he sought, we fail to see any error of which he can complain. Whether the reason given was good or not, if the act ordered was proper, no error lies.

*2. When error will be cured.*

III. The remaining errors alleged consist in the reception and rejection of testimony, and the giving and refusal of instructions. But at the outset we are met by a counter objection that there is no legal bill of exceptions in the record, and therefore none of these alleged errors are before us. It is claimed that the supposed bill of exceptions was signed and filed out of term. If so it never became a part of the record, and must be wholly disregarded. *Brown v. Rhodes,* 1 Kas., 359. The defendant was tried at the February Term 1871 of the district court of Douglas county. The verdict was rendered on the 8th of March. On the 9th of March the bill of exceptions was presented. From the 9th the court adjourned until the 24th of March. It then met and adjourned until the 10th of April. From that day it

*3. Courts; adjournments.*

adjourned to the 28th of April, upon which day the motion for a new trial was overruled, and this bill of exceptions was signed and filed, over the objection of the prosecuting attorney.   All this was done in open court.   That it was done under the direction of the judge *pro tem.* can make no difference, for by § 8 of the act concerning district courts, Gen. Stat. p. 305, the judge *pro tem.* has "the same power and authority, as the regular judge, while holding court, and in respect to cases tried before him."   But it is urged that the February Term of the district court of Douglas county was ended by operation of law before the day upon which this bill of exceptions was signed and filed.   Section 4 of an act concerning district courts, Laws 1869, p. 119, provides that "the terms of court in the fourth judicial district shall commence as follows: In the county of Anderson on the second Monday of March;  *  *  *  *  in the county of Douglas on the second Monday in February, on the third Monday in August," etc.   The second Monday in March, 1871, was the 13th of that month.   Upon that day then the regular term of court in Anderson county commenced.   Upon that day too it is claimed the term of the district court of Douglas county by necessity closed; for it is said that the court is considered in session from the commencement to the close of the term, and if the term did not close in Douglas county at the time it commenced in Anderson there would be "two terms of the district court in session in the same district at the same time, doing business and trying cases, with but one district judge."   It does not appear from the record that there was practically any such difficulty as that suggested; or that the judge of the district court was attempting the physical impossibility of a personal presence in Garnett and Lawrence at the same time, or even that the judge *pro tem.* was engaged in holding court in Douglas on the same days that the regular judge was holding court in Anderson county—a question, by the way, which may involve considerations very different from that presented by this record.   So far as appears here, (for we cannot presume difficulties and collisions when none are shown,) the district court of Douglas county was adjourned by

order of the judge from a day prior to the commencement of the regular term in Anderson county to a day subsequent to its close. Was such adjournment *ultra vires?* and did the term lapse notwithstanding such order? This is the naked question. The legislature have named the day for the opening of a term, but have not for the closing. That is confided to the discretion of the judge, and is determined by the amount of business and the necessity of suitors. By § 10 of the amendments to the code of civil procedure in 1870, (Laws 1870, p. 174,) actions are "triable at the first term of the court after the issues therein, by the times fixed for pleading, are or should have been made up ten days before the term." It may often happen that the time is insufficient to dispose of all the triable actions in one county before the day fixed for the commencement of the term in another. Has the law given to a party the right to have his case tried at a given term, and at the same time denied to the court the power to secure that right? Again, § 10 of the act concerning district courts, Gen. Stat., p. 308, provides that the "judges of the several district courts shall have the power to hold such special and *adjourned* terms in any county in their respective districts as they may deem necessary." For special terms, notice is required; but for an adjourned term a simple order adjourning the court to a given time, is all that is necessary. A special term is a separate, independent term. An adjourned term is but a continuation—a part of the regular term. Giving the district court power to hold an adjourned term, gives it power, not to adjourn from day to day, but to adjourn over a length of time, over intervening obstacles to the holding of court. It seems to contemplate just such an exigency as the present, where the business in one county is incomplete and yet the day fixed for the commencement of the term in another has arrived. The time of such adjournment is not restricted, unless it is deemed to be by the commencement of the succeeding regular term in that county. Being but a continuation, a part of the regular term, the unfinished business may be completed, bills of exceptions signed, etc. Again, while it is true there is a sense in

which it may be said that the court is considered in session from the commencement to the close of the term, and this theoretical continuity involves the presence in the county of all the officers of the court, including the judge, yet there is a practical limit to the application of this doctrine beyond which an attempt to carry it involves a manifest absurdity. Supposing that a judge holding court in some adjoining county during the present week should adjourn for a day, and come here to attend the State Fair, and that during that day an exigency should arise in his county which demanded the immediate exercise of the restraining power of an injunction, to whom shall the application therefor be made? By § 239 of the civil code the district judge, "or in his absence from the county, the probate judge" may grant an injunction. Now, by the strict theory of the continuity of the term, the district judge is present in the county, and therefore the probate judge has no jurisdiction. As a matter of actual fact he is absent from the county, and therefore the probate judge has jurisdiction. Unquestionably the latter view is correct, and illustrates a practical limitation to the idea of the continuity of a term. We conclude then that the adjournment of the district court from the 9th to the 24th of March was not *ultra vires*, that the term did not lapse on the 13th of March, and that the bill of exceptions is a part of the record, and that the errors alleged in it are proper subjects for our consideration. In coming to this conclusion it is a satisfaction to know that thus we are not estopped by a technical objection from an examination of this case on its merits, and the defendant deprived by an error which he could not help (for he presented his bill of exceptions on the 9th of March,) of a full examination of his alleged grievances in the ultimate court of his state.

Recurring then to the bill of exceptions, we find the following questions presented: The crime charged was the larceny of packages from the possession of the Express Company which through its agent was bringing them from places along the line of the Leavenworth, Lawrence and Galveston railroad on the evening train to Lawrence. On the trial it was proven

that John Mack was the messenger of the Express Company, that he came up with the train on the night in question; that he had the custody of the packages charged to have been lost; that about two hours after the arrival of the train which brought him and the packages to Lawrence, said Mack called at the house of witness, James C. Horton, and made statements to Horton in relation to the packages in controversy, and their loss; that John Mack is dead. It was then asked of the witness Horton to state to the jury what John Mack then said in relation to the loss of the packages, and when the same were lost. The proof was objected to by defendant as incompetent and hearsay testimony, which objection was overruled by the court, and defendant excepted. The witness thereupon testified to Mack's declarations alleging the loss of the packages, when and where he had lost them, etc. The defendant insists that this testimony is incompetent because it is hearsay. We fail to see any rule of evidence by which this testimony can be made competent. It is not proving the testimony given on a former trial by a witness since deceased, but the voluntary statement of such deceased person. It was not a declaration against the interest of the party making it, for Mack being in possession and responsible for the safety of the packages, his statements suggesting larceny by another, are in excuse of his own conduct, and tending to exonerate himself from liability or suspicion. Instead of being against interest, they are strongly and plainly in his interest. Nor are they admissible as part of the *res gestæ*. In order to make a declaration evidence upon this ground there must be a principal fact which it attends, and whose character it serves to explain. There must be concurrence in point of time between the act and the declaration; otherwise it is but a narrative of what has been or an assertion of what will be done. Mr. Justice Fletcher in giving the opinion in *Lund and Wife v. Inhabitants of Tyngsborough*, 9 Cush., 41, discusses this question at some length and with great perspicuity. We quote a few sentences: "If a declaration has its force by itself as an abstract statement, detached

4. Evidence; hearsay; what is *res gestæ*.

from any particular fact in question, depending for its effect on the credit of the person making it, it is not admissible in evidence. Such a declaration would be hearsay; as, where the holder of a check went into a bank, and when he came out said he had demanded its payment. This declaration was held unadmissible to prove a demand, as being no part of the *res gestæ.* This statement was mere narrative, wholly detached from the act of demanding payment which was the fact to be proved." Chief Justice Hosmer, in *Enos v. Tuttle,* 3 Conn., 250, says that declarations to become part of the *res gestæ* "must have been made at the time of the act done which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." See also 1 Greenleaf Ev., § 108; 4 Gray, 41, 584; *Farmer v. Turner,* 1 Iowa, 53; *Ellsins v. Hamilton,* 20 Vt., 627; *Noyes v. Ward,* 19 Conn., 250.

The declarations of Mack were not cotemporaneous with any act connected with the larceny. They do not purport to be statements concerning what is transpiring, but a narration of something which has already transpired. They qualify and explain no present act. They are but a history of the past; and whether that past be two hours or two years old cannot affect the principle. They are but hearsay. Nor does the fact that the witness is dead, and no better evidence than his statements of what transpired can be produced, affect the rule. Hearsay is but hearsay, whether the party whose statements are sought to be introduced be living or dead. This error is a material one. We cannot say how far it affected the minds of the jury in coming to their conclusion; but that it might have some influence, is evident. A great many other questions are presented in the bill of exceptions, but as this disposes of the case, and the other questions may not arise on a second trial, we forbear any dicussion of them.

The judgment of the district court will be reversed and a new trial awarded, and the defendant will be returned from the penitentiary and delivered over to the jailor of Douglas

county to abide the order of the district court of that county. All the Justices concurring.