## In the Matter of the Petition of DANIEL A. MILLINGTON, for a Writ of Habeas Corpus.

1. COURTS, *Power of, to Punish for Contempt.* Courts of record have an inherent power to punish for disorderly conduct in the court room, resistance of their process, or any other interference with their proceedings which amounts to actual contempt.

2. ———— *Limit of Power.* Sec. 2 of ch. 28, Comp. Laws 1879, places no limit on the power of the district court in matters of contempt, but only upon that of the district judge at chambers.

3. JURISDICTION; *Terms of Court; Habeas Corpus.* On May 13, 1880, an order was entered in the district court of Cowley county adjourning the court until Monday, May 17th. That was the day fixed by law for the commencement of the term of the district court of Sedgwick county, a county in the same judicial district. That term commenced on that day, and the regular judge being absent, a judge *pro tem.* was elected, who held court on both the 17th and 18th. The regular judge was present in Cowley county, and assumed to hold court pursuant to adjournment on the 17th and 18th, and at the time the district court of Sedgwick county was in session. *Held,* That such order of adjournment was void; that the term of the district court of Cowley county was, on those days, suspended or closed by the commencement of the term in Sedgwick county; and that the proceedings on those days in Cowley county were extra-judicial and void, and that a defendant tried and sentenced upon those days was entitled to a discharge upon *habeas corpus.*

### Original Proceedings in Habeas Corpus.

PETITION for a writ of *habeas corpus*, filed in this court on the 28th day of May, 1880, by *Daniel A. Millington,* who also appealed from the judgment against him in the court below.

On the 17th day of May, 1880, Hon. W. P. Campbell, judge of the thirteenth judicial district, filed in the office of the clerk of the district court of Cowley county, a certain complaint against *Millington* and another, in words as follows:

(*Court and title omitted.*) Now, on this 17th day of May, A. D. 1880, there being reasonable grounds for believing that Daniel A. Millington and Edwin P. Greer are the editors, publishers and proprietors of a weekly newspaper called the Winfield *Courier,* published and of general circulation in the county of Cowley; and that heretofore, to wit,

·on the 12th day of May, inst., the said Millington and Greer ·caused to be published in said paper several articles of and ·concerning a certain case then pending and undetermined in this court, in which the state of Kansas was plaintiff and ·Charles H. Payson was defendant, and, among other things, then and there published the following language, viz.:

"THE PAYSON CASE.— Probably no case was ever tried in this county ·which has created so much interest as the trial of C. H. Payson, just ter:minated, with the verdict of guilty, in the district court. After the verdict, large squads of men were gathered on each corner, discussing with much ·warmth, and criticizing scathingly those who took part in the trial, either as witnesses, attorneys, jury, or judge. The majority seemed to sympathize ·strongly with Payson — eulogized his plea in his own defense as one of the best forensic efforts ever heard; thought that though Payson was probably guilty of something bad, he was not guilty of the offense charged in the indictment; and that if he was guilty of another offense, the prosecuting witness was equally guilty of the same offense. They criticise the county attorney for being too zealous in the prosecution, the judge as acting as prosecuting attorney, and ruling out evidence supposed to be favorable to Payson. The minority seemed to be equally sure that Payson was guilty as charged, and had been given a fair trial; that Torrance had done his whole duty, and nothing more; that the judge was fair and impartial, and that the jury could not have done otherwise than it did. The new jury of the whole public will probably never be able to agree."

And again, the following language, viz.:

"THE COURT AS ATTORNEY.— The boys tell us that in the trial of Pay·son, when the witness Goodrich was on the stand for cross-examination, Judge Campbell took the witness out of the hands of the attorneys and ·cross-examined him for an hour, in an effort to make him contradict himself. This reminds us of a case before Judge Davis, of Illinois, in which the attorney for the prosecution demanded that the case proceed to trial at the time set, though the attorney for the defense was absent. Judge Davis said, 'The case could go to trial, but would mention that a similar case happened in LaSalle county, and this court looked to the interest of the absent attorney for the defense, and,' said Judge Davis, 'you remember that ·we beat 'em.'"

And again, the following language, viz.:

"County-Attorney Torrance has won additional laurels in the successful ·conduct of the Payson case. Some are inclined to divide the credit equally between the prosecuting attorney and the judge, but we assert, and we will ·stick to it, that Torrance was the main prosecutor."

The court being of the opinion that the publications, such ·as above set forth, concerning a case pending in court, are calculated to obstruct and embarrass the administration of justice, have a tendency to prejudice the public concerning the merits of the case, and to weaken the influence and authority ·of, and destroy public confidence in, the tribunal trying the ·cause, and as such are a contempt of court, therefore, ordered ·that an attachment issue forthwith against the said Millington and Greer, and that they be brought before the bar of

this court and be required to answer in writing and under oath, the matters herein set forth and charged.

On the same day the respondents were arrested upon an attachment issued in pursuance of the foregoing order, and having been brought to the bar of said court, they filed a verified answer to the complaint, as follows:

"*In the matter of Daniel A. Millington and Edwin P. Greer:* Now come the said Daniel A. Millington and Edwin P. Greer, editors and publishers of the Winfield *Courier*, and for answer admit that the said Millington caused the language complained of to be published in said paper of May 13th inst.

"For further answer, they say that the said Millington is the responsible editor of said paper, and that the said Greer is not to blame for the appearance of the said language; that it was believed by the said Millington that the case commented on was not then pending in the court, but had been disposed of, and could not be affected by such comments; that he had no intention to embarrass or obstruct the administration of justice, or to prejudice the public concerning the merits of the case, or to weaken the influence, the authority of, or destroy public confidence in, the tribunal trying the cause. It is his opinion that the two articles first quoted in the complaint, are only statements of opinions expressed of the question, on which he withheld his own views, and that the last quotation is a harmless joke, which would have no tendency to prejudice any one.

"The said defendants disclaim any intention to do or publish anything in these matters which is not proper in legitimate journalism.

"And the said Daniel A. Millington and Edwin P. Greer respectfully submit, that this court and the judge thereof have no jurisdiction to try and punish them for the supposed offense set forth in the order for their arrest."

Thereafter on that day, *Millington* testified substantially as follows:

"My name is Daniel A. Millington. I am one of the respondents in this proceeding. I am the responsible editor and manager of the Winfield *Courier*, and am responsible for the publications complained of therein. Edwin P. Greer is local editor, but is not responsible for the management of the *Courier*. I wrote the first two articles complained of, but

did not write the third; that was written by Edwin P. Greer, but submitted to me and published with my knowledge. I did not attend court. I did not know what the testimony was, nor what took place on the trial of Payson, except what was generally talked on the streets and elsewhere as having taken place. I heard on Monday that a motion for a new trial had been made, and on Tuesday morning I heard that the motion had been overruled. At the time the paper was published, I supposed that the case had been disposed of. I heard after the paper was made up and in press, that the motion was set for hearing on Thursday. The paper was really printed on Wednesday, about two o'clock P. M., and a portion of the issue was placed in the postoffice that night, although the paper was dated Thursday, the 13th. My belief was that Payson was guilty; that he had a fair trial. I did not think that there was anything in the articles complained of, calculated to embarrass the court, or which could be construed as reflecting on the judge or jury. I thought that part referring to the court as prosecutor was a mere joke, and my motive was not to reflect on the court or judge; and all the articles were published as matters of news, and not to reflect upon or detract from any one. I hardly think that the articles can be construed as being published as a joke at the expense of the judge of this court. I do not think that the article can be construed as a statement that the court acted as prosecutor. I was asked what the punishment would be—I don't know by whom—but I said I thought that would be the last business transacted in court; I knew that was the usual way."

The *Courier* of date May 13 was then introduced in evidence, and it was admitted that the article on the third page, entitled, "The Payson Case," was written by Edwin P. Greer, who attended court during the greater part of the trial, and was by him submitted to Millington.

On the 18th day of May, 1880, judgment was rendered in said action, as follows:

"It is the judgment of the court that the respondent, Daniel A. Millington, pay to the state of Kansas a fine of two hundred dollars, with costs, and that he stand committed to the jail of Cowley county until the fine and costs are paid. At the request of the respondent, execution is stayed on this judgment for ten days, to give time to the respondent to

make a case and file a petition for review in the supreme court."

The opinion herein was filed September 21, 1880.

*L. J. Webb, Pyburn & Brush, Chas. C. Black,* and *W. C. Webb,* for petitioner:

1. In imposing a fine of two hundred dollars against the respondent, the district court clearly exceeded its jurisdiction. It may be urged that courts have an inherent power to punish for contempts. This may be true, in the absence of any legislative provision on that subject, but the people of this state, in adopting organic laws, and in their legislative enactments, seem to have fully realized the danger and disadvantages of such a system as is implied in introducing the arbitrary discretion of the judge, in place of fixed rules prescribed by the legislature, and in this way leaving the members of the community without an established guide for their actions, or a reliable bulwark against the prejudices of individual judges.

The district courts of this state have only such jurisdiction or power as may be provided by law. (Const. of Kas., art. 3, § 6.) The legislature has provided by statute for the jurisdiction of the district courts within their respective districts in cases of contempt, by fixing the punishment at a fine of not more than one hundred dollars and imprisonment, or either. (Comp. Laws 1879, ch. 28, § 2.)

2. Provisions of the statute excluding from the benefits of the *habeas corpus* act, persons committed or detained by virtue of the judgment of a competent tribunal, only apply where the court had jurisdiction to render the judgment complained of. Jurisdiction of the person and of the subject-matter are not alone conclusive; but the jurisdiction of the court to render the particular judgment is a proper subject of inquiry; and if the record presents the question, it must be determined whether the court had jurisdiction and the judgment was warranted by law.

In this state, the character and extent of all punishments are prescribed by statute, and no court can give a judgment

or pronounce a sentence, valid for any purpose, in open and palpable violation of a positive statute; and a sentence not warranted by law, or in excess of the punishment so prescribed, is absolutely void, and a party held by virtue of a judgment so pronounced is entitled to be released on *habeas corpus.* ( 5 Cold. 326; 5 Hun, 317; 60 N. Y. 559; 49 Mo. 291; 64 id. 205; 4 Wis. 522; 34 id. 177; 44 id. 426; 16 N. Y. S. C. R. 569.)

3. At the time of the commencement of this proceeding and the rendition of the judgment, the May term of the district court of Cowley county had terminated, and the district court of Sedgwick county was in session by operation of law. (Comp. Laws 1879, ch. 28, § 26.)

The petition for the writ, and the agreement of the county attorney of Cowley county, show that the district court of Sedgwick county was actually in session on the 17th day of May, 1880, the day fixed by law for holding said court, and that a judge *pro tem.* was elected as provided by law. (Comp. Laws, 1879, ch. 28, §§ 4, 5, 6, 7, 8.) Two terms of the district court cannot be held in one district on the same day. (1 Kas. 86; 1 Scam. 555; 2 id. 227; 13 Ill. 671; 2 G. Greene, 559.)

Sec. 29, of said ch. 28, provides for the holding of special and adjourned terms, as they may be deemed necessary. This was not an adjourned term, because the court had no power to adjourn the same into the time prescribed by law for holding another court in the same district. It could have adjourned over and beyond the Sedgwick court, which we think, in the language of this court, was an "intervening obstacle." ( 8 Kas. 358.)

The regular session of the Cowley district court closed Saturday, May 15, and of course the court held on Monday, the 17th, was not a special session, for it was impossible, for the notice of a special term, as required by law, was not given and could not have been.

4. But we submit that the publications complained of do not constitute a contempt. It is very clear from the first one

that it is a statement of public sentiment as expressed on both sides of the trial of Payson, and there is no expression anywhere that was in the least calculated to embarrass the administration of justice, or that had any tendency to prejudice the public concerning the merits of the case, or in anywise affect the court or the jury which was out of the case. (Const. of Kas., § 11 of Bill of Rights; 79 Ill 45; 6 Iowa 245; 40 id. 207.)

The answer of respondents fully exonerates them. In proceedings for an alleged constructive contempt, if the person charged fully answers all the charges against him, he will be discharged. (41 Ind. 464, and cases there cited; 47 id. 528.)

*Davis & Jetmore*, for The State.

The opinion of the court was delivered by

BREWER, J.: On the 17th of May, 1880, the judge of the thirteenth judicial district caused an attachment to be issued against D. A. Millington, the editor and publisher of the Winfield *Courier*, for contempt, on account of certain articles published in said paper. The same day, Millington was arrested, and after a hearing, adjudged guilty and fined two hundred dollars. This order and judgment have been brought to our consideration both by *habeas corpus* and appeal. They are challenged on various grounds, and said to be not only erroneous, but absolutely void. It is claimed that if said Millington were guilty of a contempt, the punishment imposed is one beyond the power of the court to impose, and therefore void. Again, it is urged that the court had become adjourned by operation of law, and that therefore this entire proceeding was extrajudicial and void. Further, that the articles complained of did not constitute a contempt, and had no tendency to obstruct the administration of justice. And still further, that the answer of said Millington fully exonerated him.

It is obvious that some of these matters are not open for consideration in the *habeas corpus* proceeding. For in that, only questions of power, and not questions of error, are before us.

The first proposition is, that the district court has no power to impose a fine of $200 for contempt. This is claimed under § 2 of ch. 28 of the Compiled Laws of 1879. That section reads as follows:

"The judges of the district courts, within their respective districts, shall have and exercise such power in vacation, or at chambers, as may be provided by law, and shall also have power in vacation to hear and determine motions to vacate or modify injunctions, discharge attachments, vacate orders of arrest, and to grant or vacate all necessary interlocutory orders, and to punish for contempt in open court, or at chambers, by fine not to exceed one hundred dollars, and imprisonment, or either, and to assign not exceeding one attorney to prisoners who may be unable to employ counsel."

The argument is, that as the constitution provides that the district courts shall have such jurisdiction as may be provided by law, (Const., art. 3, § 6,) and that as this is the only section in which the power of the court or judge to punish for contempt is named, it includes all the power vested in a court or a judge in matters of contempt.

We do not agree with counsel in these views. The plain language of the section is a grant of power to the judge, and not to the court, and the constitution provides that the several justices and judges of the courts of record in this state shall have such jurisdiction at chambers as may be provided by law. (Const., art. 3, § 16.) The section all the way through grants power to the judge, and not to the court. It is true, it speaks of "contempt in open court or at chambers," but it grants no power to the court; it simply provides what the judge may do in such cases. The prior section grants power to the court, and gives it "general original jurisdiction of all matters, both civil and criminal (not otherwise provided by law)". It may be conceded that the language of § 2 is not altogether apt or happy, but as we construe it, it contains only a grant of power to the judge in vacation in pursuance of said § 16 of the constitution, and gives to him a power at chambers to punish for a contempt committed in open court. Such is the plain reading of the language; and when we

notice that the prior section grants power to the court, the obvious meaning of the language seems imperative. If it be contended that without this § 2 no power is in terms granted to the district court to punish for contempt, we reply that it is one of the prerogatives — one of the inherent powers of a court — that it may punish for disorderly conduct in the court room, resistance of process, or any interference with its proceedings which amounts to actual contempt. The statute in terms nowhere gives to this court, which is the final tribunal, the ultimate arbiter of all rights and disputes between litigants, the power to punish for contempt of its proceedings and orders. And yet, is it possible to suppose that this court may not punish for a disturbance in its court room, or for a resistance of its process? (Bacon's Abridgement, title, Courts; *ex parte* Robinson, 19 Wall. 505; *Morrison v. McDonald,* 8 Shep. 550; *State v. Woodfin,* 5 Ired. 199.) So far as judges of the district court acting in vacation or at chambers are concerned, the legislature has limited their powers, though even as to them, it has placed no limit on the term of imprisonment they may impose. Upon the power of justices of the peace, it has also placed a limitation. (Comp. Laws 1879, p. 732, § 199 and 200.) But as to courts of record, it has left their powers to punish for contempt free and open to all the necessities of the occasion. There are exceptions to this, as in the matter of disobedient witnesses, etc., but outside of the several named limitations, the power of courts of record to punish for actual contempt is left free to the actual necessities of the wrong. A poor farmer who resists the process of the court may be fully punished by a fine of one hundred dollars, but a railroad magnate who tries to rob the county or defies the process of the court, would laugh at such a fine. The legislature has wisely left the power of the court equal to the wrong attempted. Any resistance of the power or process of a court of record of this state may be punished by a fine large enough to recompense the state for any loss it may suffer, and large enough to deprive the offender of any profits he may hope to receive from his wrong. That this

power is a vast one, may be conceded; that its exercise may sometimes be necessary, is clear; and to guard against any wrongful exercise of this power by the lower courts, is the reviewing power of this court, and as to all courts the power of impeachment and the severe review of public opinion. With these checks it would seem that the power, though vast, is safely lodged. All power is in a certain sense dangerous, but with an elective judiciary, a free press and the power of impeachment, the people can soon relieve themselves of a corrupt or partial judge. Power must reside somewhere— power to compel or restrain action, and the vast volume of the testimony of experience is that nobody is so safely trusted with power as the courts.

A second proposition of counsel is, the district court of Cowley county, the county in which these proceedings were had, had become adjourned by operation of law, and therefore that this entire proceeding was extrajudicial and void. The facts are these: This proceeding was commenced and trial had on the 17th day of May, and judgment rendered on the 18th. The 17th was the day fixed by law for the commencement of the term of the district court in Sedgwick county, and in fact both on the 17th and 18th, and at the times these proceedings were had, the district court of that county was in session, a judge *pro tem.* having been elected in the absence of the regular judge. It also appears that the district court of Cowley county, which had been in session for some time, was on the 13th adjourned over the 14th and 15th, and to the 17th, the day for the commencement of the Sedgwick county term. Now upon these facts it is contended that two terms of the district court cannot be held in the same district on the same day, and that as the 17th was the day fixed by law for the commencement of the Sedgwick county court, the adjournment of the Cowley county court to that day was virtually an adjournment *sine die;* or at least, that the Cowley county court could not be held upon that day, or until some adjournment had been made of the Sedgwick county court. In the case of *The State v. Montgomery,* 8 Kas. 358, it

was decided that the district court could adjourn the term in one county to a day subsequent to that fixed by law for the commencement of the regular term in another county of the same district. But this presents a very different question! Here we find the district court, which by the constitution has but one regular judge, being held in two counties by two judges. If this be proper, then in every county in the district, court may be held continuously, presided over in all but one by judges *pro tem.* This might have one advantage in preventing an accumulation of business, but it is against the spirit of the constitution. That organic law of the state provides for one district judge in each judicial district, to be elected by the people of the district. (Const., art. 3, § 5.) Clearly, the idea is that this single elected judge is the sole responsible judicial officer for the district court of the entire district. Whatever provision exists for judges *pro tem.*, is not for the purpose of duplicating or increasing the judicial force, but to preserve a continuous though single force. They act for and in the absence, sickness, or disqualification of the elected judge. "The general principle is that the judiciary are elective." (*The State, ex rel., v. Cobb,* 2 Kas. 53.) Litigants are entitled to have this principle recognized and enforced. The commencement of a term is a legislative command to the elected judge to be present and discharge the judicial duties devolving upon him in that county. It operates as a suspension of his duties in all other counties in his district, and suspends, or closes, the terms in those counties. The legislature provides for terms, in order to secure his personal attention to the litigation in each county. It prescribes the commencement of each term, leaving the time of closing to the discretion of the judge acting upon the necessities of business. It does not leave the commencement to his discretion, because it intends that each county shall have the benefit of his presence and labors at a certain and known time. The people of the entire district elect the judge. Each county is entitled to the benefit of his learning and experience. And the legislature by terms names the

time of his attendance. Impliedly, thereby commanding him to attend in one county, it equally commands him to leave all the others. The case of *Grable v. The State*, 2 G. Greene, 559, is strongly in point. Under similar provisions, the supreme court of Iowa there held that the term in one county was closed on the day the term was by law to commence in another. It says: "From the constitution of our judicial system, it is apparent that the court cannot be held in two counties in the same district on the same day, and by one and the same judge." So we say here, there is but one district court and one district judge in a district. The officer is not to be duplicated, and when a term commences in one county, the court everywhere else in the district is closed, or suspended. A judge *pro tem.* is only a substitute, and never a duplicate.

It follows from these considerations that the adjournment of the Cowley court to the 17th was void, and the proceedings on the 17th and 18th in that county were extrajudicial and void. There was no court then in session in that county. *Habeas corpus* will lie in such a case, and the petitioner is entitled to a discharge. Such is the order which must be entered in this case; and in the appeal, the order will be, that the judgment apparently rendered in court-time will be reversed, and the appellant discharged. The same order will be entered in the two cases of William Allison. Under these circumstances, it is unnecessary and probably improper for us to consider the other questions presented and discussed by counsel.

All the Justices concurring.