No. 39,037

THE STATE OF KANSAS, *Appellee*, v. WARREN LOMAX, *Appellant*.

(264 P. 2d 908)

Opinion filed December 12, 1953.

*J. John Marshall*, county attorney, of Pittsburg, argued the cause, and *Harold R. Fatzer*, attorney general, of Topeka, and *Richard D. Loffswold*, assistant county attorney, of Pittsburg, were with him on the brief for appellee.

*Charles H. Menghini*, of Pittsburg, argued the cause, and *D. G. Smith*, of Girard, was with him on the brief for appellant.

The opinion of the court was delivered by

HARVEY, C. J.: By an information, duly filed in the district court of Crawford county, Warren Lomax was charged with killing Levi Logan by stabbing him with a butcher knife in the heat of passion and without design to effect death in violation of our statute G. S. 1949, 21-413, being one of the sections of our statute which defines manslaughter in the third degree. A trial by jury resulted in a verdict of guilty as charged. Defendant's motion for a new trial was overruled and he was duly sentenced to a term in the penitentiary of not more than three years as authorized by G. S. 1949, 21-422.

Defendant has appealed and contends the court erred in admitting over his objections the testimony of witnesses as to the

statements of Logan after he was stabbed and which were not made in the presence of the defendant. He further complains that the court did not grant a new trial because of its error in admitting the testimony referred to. The result is that the only real question before us is whether the evidence now complained of was properly admitted.

The story of the homicide may be told briefly as follows:

At the time of the homicide Warren Lomax was living at Pittsburg where he was employed by the National Gypsum Company known as the Kansas Ordnance Plant at Parsons. He and Levi Logan had been acquainted for four or five years and regarded each other as friends. At the time of the homicide Levi Logan was living in Parsons in the home of Irma Faye Keys and her mother and was working at the Kansas Ordnance Plant in Parsons. It appears that each of them was indebted to a loan company in Pittsburg where they were making periodical payments; that Logan had given Lomax $5 to pay on his loan at the loan company and had word the payment had not been made. There appears also to have been some other money which Logan claimed Lomax owed him.

On July 25, 1952, Logan, Irma Maye Keys and her mother drove from Parsons to Pittsburg where Logan went to the loan company office and found that the $5 payment he had sent by Lomax had not been received by the loan company. From there he went to the home of Lomax and Mrs. Keys went to a near-by restaurant to wait for him. Logan went to the basement where Lomax was and criticized him severely and said Lomax owed him $70. Lomax thought it was not more than $25 and explained that his wife had made the mistake of including Logan's five dollar bill with some money he was paying and that the whole thing would be straightened out. Apparently Logan was not satisfied. He went over to the restaurant and by that time Mrs. Lomax was there, as well as Mrs. Keys and a Mrs. Jackson who apparently operated the restaurant. Logan told Mrs. Lomax he was going to arrest her husband if he didn't pay what Logan claimed was due him. Mrs. Lomax was quite disturbed and began to cry. About that time Mr. Lomax came in and found his wife crying, and learned the reason for it. Lomax and Logan had words. Lomax struck Logan at the side of the head; Logan struck Lomax in the face and the testimony of Mrs. Keys was that Lomax grabbed a butcher knife from the drain-

board; raised it up high and struck Logan in the chest. Logan received a severe stab wound and began bleeding; the fighting stopped. Logan left the restaurant by one door; Lomax by another. When Logan left the restaurant he ran to a garage about a block and a half away and as he went in the door he told the manager to call for the police and an ambulance. This was done. Logan was bleeding severely and soon laid down on the floor. He was asked what was the matter and said he had been stabbed. He was asked who stabbed him and the witness understood him to say Lomax. He seemed to be weak and his voice was low. A moment or two later in answer to some questions he told a more detailed story of what took place. The questions which developed that story were objected to; these objections were overruled. The witness disclosed that defendant was not present. Logan died about a week later.

At the hearing of this motion for a new trial the court's ruling respecting this testimony was stressed as erroneous and the court made the following remarks which apparently were taken by the reporter and were shown in the abstract.

"Court: At the time the question was asked concerning what the decedent said to officer Pryor, or officer Nightingale, the Court of course could not anticipate what the answer to the question would be.

"The court then had to rule as to whether or not the statements made by the deceased were admissible. The court held that they were admissible, still feels that he ruled correctly at that time.

"The statements as related by the officers that the decedent made were of some length, considerable more than the Court anticipated would be the answer, but I do not believe the record will show any motion to strike that answer from the record.

"Had the matter of the officers' answer been in the Court's mind in advance there might have been some question as to its admissibility under the law of *res gestae,* but having been required to rule previous to the answer, and there being no motion to strike the answer from the record, the Court does not feel that he erred in the admission of the testimony and the other matters raised in the motion of a new trial will be overruled."

In this court counsel for appellant earnestly contend that the testimony of the witnesses who talked with Logan at the garage was incompetent hearsay, not being close enough in place and time to the actual stabbing to be a part of the *res gestae.* In support of

the argument they cite *State v. Montgomery,* 8 Kan. 351, 360, but there more than two hours had elapsed before the statements `com-plained of were made. We think the case is not in point. They also cite *The State v. Pomeroy,* 25 Kan. 349, and quite a little time had elapsed before the person claimed to have been assaulted talked with the witnesses called to testify and there was no evidence of any offense having been committed except that told by the complaining witness to the witnesses. We think the case is not in point. Some civil cases´ are cited which we think are not directly in point. They also cite *The State v. Morrison,* 64 Kan. 669, 680, 68 Pac. 48, but there the statements were held to be properly admitted in evidence, paragraph 4 of the syllabus, and the court said:

"For another reason no error was committed by admitting the declaration. That the defendant killed the deceased is a conceded fact, and even if it were no part of the *res gestae,* error could not have been predicated upon it." (p. 680.)

Many of our later cases deal with this question. See *The State v. Morrison,* supra; *The State v. Alexander,* 89 Kan. 422, 131 Pac. 139; *The State v. Powers,* 92 Kan. 220, 139 Pac. 1166; *The State v. Smith,* 103 Kan. 148, 174 Pac. 551; *State v. Barbour,* 142 Kan. 200, 46 P. 2d 841; and, *State v. Funk,* 154 Kan. 300, 118 P. 2d 562.

We think the evidence complained of was properly admitted; certainly the first part of it in which Logan stated he had been stabbed and named Lomax as the man who stabbed him even though that was stated in answer to questions. There is more question about his later statements in which he related how the controversy arose between him and Lomax but that was testified to by Lomax when he took the stand as a witness in his own behalf and practically all of it had been told by other witnesses for the state. Indeed, the evidence of the state was ample to sustain the verdict if none of the evidence concerning which appellant now complains had been admitted.

There is no error in the case. The judgment of the trial court is affirmed.